## CIRCUIT COURT OF FAIRFAX COUNTY

Mark Peterson
and Linda Peterson

v.

Fairfax Hospital Systems, Inc., et al.

### Case No. (Law) 111888

BY JUDGE THOMAS D. HORNE

### March 18, 1993

This case came to be heard on March 2, 1993, upon the demurrers filed by the various defendants in this action. Without restating in detail the various reasons why the defendants challenge the legal sufficiency of the instant motion for judgment, the Court will comment upon certain objections common to each and which require this Court to sustain the demurrers with leave for the plaintiffs to replead their case should they be so advised. These objections constitute a thorough

commentary on the law of fraud, breach of fiduciary duty, and conspiracy.

The instant motion for judgment sets forth a claim for damages predicated upon four theories of recovery, each of which is set out in individual counts. In addition, there is a separate count relating to a claim for punitive damages.

Plaintiffs are the parents of Matthew Peterson, an infant. In their complaint, they relate a series of events surrounding the hospitalization of their son in the Fairfax Hospital. These events include negligent acts on the part of the staff of the hospital resulting in injury to Matthew and an attempt by the defendants to conceal such negligence from the plaintiffs.

They suggest that the defendants, and principally Fairfax Hospital, breached their fiduciary duty to plaintiffs by actively concealing an unauthorized, and dangerous, administration of adult strength insulin to Matthew. They further allege that the defendants, in relating, or failing to relate, information material to Matthew's care, committed fraud (Count II) or constructive fraud (Count III). Lastly they charge the defendants with civil conspiracy to conceal the liability of the hospital for Matthew's injuries attendant to the unauthorized administration of insulin.

Although a demurrer admits not only the facts pleaded but the inferences properly to be drawn from those facts, a motion for judgment must apprise the defendants of the nature of the claims as to each such defendant. Thus, while the memoranda amplify the pleadings and are helpful in understanding the context in which the instant action arises, they are not to be considered a substitute to well articulated pleadings. This is particularly so when considering a variety of allegations which may not be universally applicable to all of the defendants.

While it has been represented that the health care providers settled the malpractice claim for Matthew's injuries, that is not readily gleaned from the motion for judgment. Instead, absent the representations of counsel, the reader might interpret the breach of fiduciary duty claim as one for medical malpractice. § 8.01–581.1, Code of Virginia.

As counsel for the defendants have observed, the issues relative to attorney misconduct are readily confused with sanctions provided by statute or rule of court.

In spite of the fact that there are allegations concerning the contractual arrangements of the hospital with the plaintiffs, the pleadings do

not indicate whether these are the wellspring of a duty predicated upon a "special agreement." Contrariwise, the actions of such a health care provider might be governed by the provisions of Chapter 21.1 of Title 8.01 of the Code of Virginia. *Pierce v. Caday*, 244 Va. 285 (1992).

The existence of a fiduciary duty owed to another is to be determined as an issue of fact. *Allen Realty Corp. v. Holbert*, 227 Va. 441 (1984). Absent some clarification in the pleadings, defendants are not apprised of the nature of the duty owed by each of the defendants and upon which recovery is sought. Thus, the contractual duty owed the parents of a patient in a hospital differs on its face from the duty, if any, owed by a legal adversary. *See e.g., Ayyildiz v. Kidd*, 220 Va. 1080 (1980). However, the Court does not herein decide that, properly pleaded and proven, an independent fiduciary duty, not otherwise covered by the statutes relating to malpractice claims, might be found to have existed between the hospital and Matthew's parents such as would justify an award of damages in excess of the malpractice cap.

The Motion for Judgment fails to relate any of the damages claimed to the specific wrong alleged to have been committed. Each of the defendants have alluded to this failure in the complaint. Counsel for Mr. Walsh and Walsh & Cremins, P.C., alludes to this when he states, "no allegations even suggest that any additional harm was incurred by their son by remaining in Fairfax Hospital." Fairfax Hospital and INOVA Health Systems allude to there being, "no damages [alleged] cognizable at law . . ." and a failure to allege any damages with specificity concerning the conspiracy claim. In their memorandum they elaborate upon the requirement that, while precise damages need not be alleged, some basis of recovery must be set out in the complaint.

As counsel have observed, fraud must be pleaded with specificity so as to put defendants on notice as to the nature of the claim against each defendant. *Tuscarora v. B.V.A. Credit Corp.*, 218 Va. 849 (1978). Fraud, such as will constitute grounds of recovery consists of five elements: (1) a representation as true that which is false, (2) in such a way that a reasonable person would rely upon such statement, (3) which was intended to be relied upon, (4) which was relied upon, (5) so as to cause damage. Conversely, as counsel for defendants have observed, to the extent the pleadings rely upon silence and concealment as a basis for fraud, the pleadings fail to show from whence the various duties arise as to the individual defendants to convey such information as has misled the plaintiffs to their detriment.

While the Court might infer that the conspiracy alleged in Count IV, was for an "unlawful purpose," the complaint fails to specify in what manner each of the individual defendants was involved in such conspiracy, or how such conspiracy resulted in the damages claimed. However, the Court is not persuaded that, on demurrer, the intracorporate immunity doctrine would stand as a bar to plaintiffs going forward with their case. However, as the case may be repleaded, to the extent plaintiff seeks recovery as to each defendant upon the conspiracy count, the allegations should reasonably apprise each such defendant as to the theory upon which such recovery is sought.

Accordingly, the demurrers of the various defendants will be sustained as to each count of the motion for judgment with leave granted to the plaintiffs to replead should they be so advised.

### September 23, 1993

Pursuant to the prior Order of the Court, this case came to be heard on the demurrers and special pleas filed by the Defendants. By agreement of counsel, with the concurrence of the Court, no evidence was presented on the various pleadings. In the event matters of fact necessary to a determination of the special pleas were found to exist, an evidentiary hearing would be scheduled at a later time. Counsel have submitted memoranda and oral argument in support of their positions relative to the Amended Motion for Judgment.

The Amended Motion for Judgment presents a case for damages arising out of an alleged conspiracy and concert of action by a health provider and others to actively conceal negligence on the part of the health care provider. Prior to the instant action being instituted by the Plaintiffs, the malpractice claim against the health care provider was settled by payment of the maximum recoverable under the applicable malpractice cap, $1,000,000.00. The Amended Motion for Judgment requests damages, both compensatory and punitive, in the aggregate amount of $58,000,000.00, of which $50,000,000.00 is punitive damages.

### *The Parties*

Plaintiffs, Mark and Linda Peterson, are the parents of Matthew Peterson, an infant. While a patient in the care of the Fairfax Hospital, it is alleged that Matthew received an unprescribed administration of adult strength insulin which has left him permanently injured.

Matthew Peterson was in care of the Fairfax Hospital at the time he was administered the insulin. Fairfax Hospital by INOVA Hospital Systems is a subsidiary of its parent corporation INOVA Health System Foundation. It is alleged that INOVA Hospitals and INOVA Health Systems Foundation acted in concert to defraud the Plaintiffs by concealing from them the true cause of their son's condition.

The Virginia Insurance Reciprocal is named as a defendant based upon its alleged complicity in the fraudulent actions of the Hospital, its parent organizations, and of its counsel. It is suggested that this insurer of the Hospital, both ratified and authorized the actions of counsel for the Hospital.

Gerald Walsh is named in his capacity as counsel for the Hospital and of its parent organizations. Mr. Walsh is alleged to have actively participated with the agents of the Hospital and INOVA to fraudulently conceal the cause of Matthew's injuries while he was a patient at Fairfax Hospital.

Crews & Hancock and Walsh & Cremins are law firms with which Mr. Walsh was associated during and after Matthew Peterson's hospitalization. Plaintiffs assert that Walsh and other members of the firm of Crews & Hancock actively participated in the scheme to defraud the Petersons. In addition, they assert that both firms ratified and authorized the actions of Mr. Walsh.

### Background of the Case

In November of 1989, Mark and Linda Peterson filed suit in their own right and as next friend for their son Matthew against Fairfax Hospital System, Inc. In that action, in addition to charging negligence of the Hospital in the administration of the adult strength insulin and the damages attendant to such administration, they asserted:

> Following the incident in which Matthew Peterson was injured, Defendant engaged in a deliberate pattern of withholding information relevant to this incident from Mark and Linda Peterson. Such conduct was contrary to the duties and obligations owed by Defendant to Mr. and Mrs. Peterson, and caused further anxiety, suffering, embarrassment and emotional damages . . . . In seeking to conceal and cover up the true cause of Plaintiff Matthew Peterson's injury and other such misconduct in the Neonatal Ward at Fairfax Hospital, various agents of Fairfax Hospital conspired with each other

and with, upon information and belief, various doctors, and possibly counsel, to accomplish this improper end. Defendant's actions in this regard were willful and malicious, or evidenced such a deliberate and wanton disregard for the rights of Plaintiff to warrant the imposition of punitive damages.

Plaintiffs in that action sought recovery of compensatory and punitive damages from the Hospital for breach of conduct, breach of warranty, common law negligence, medical malpractice, intentional infliction of emotional distress, negligent infliction of emotional distress, common law fraud, constructive fraud, and conspiracy. They asserted, in connection with their claim for common law negligence, that, "[d]efendant has indicated the possibility that an interloper, not their agent, administered the insulin. If such were the case, Defendant was negligent in not providing adequate security to the Plaintiffs."

Those Counts alleging fraud and conspiracy for which Mr. and Mrs. Peterson sought recovery were predicated upon the concealment of information which it was claimed that the Hospital was under a duty to disclose.

In its Demurrer to the Motion for Judgment in the prior proceeding, the Defendant Hospital noted the failure of the Plaintiffs to, "allege that there was a material false representation that they [the Petersons] believed to be true and upon which they acted upon to their detriment." While the trial court overruled the Demurrer as to the count brought for intentional infliction of emotional distress for concealment and a failure to disclose, it sustained the Demurrers to the fraud and conspiracy counts. The trial court granted leave to the Plaintiff to amend with respect to these counts to which a demurrer was sustained (including those counts sounding in fraud and conspiracy).

In their Amended Motion for Judgment filed in accordance with the Court's Order in the prior case, Plaintiffs sought recovery for medical malpractice and intentional infliction of emotional distress. This action was concluded by the entry of a Final Order on June 28, 1991. The Order reflected a compromise settlement among the parties in which $1,000,000.00, the malpractice cap, was paid by the Defendant in ex-

change for the dismissal with prejudice of all claims of the infant and adult Plaintiffs then pending.[1]

The present action was originally filed on January 21, 1992. Various demurrers and other responsive pleadings were filed by the respective Defendants. By letter opinion dated March 18, 1993, this Court sustained the Demurrer of the Defendants with leave for Mr. and Mrs. Peterson to replead their case. The prior rulings of the Court reflected in that letter are incorporated herein and are to be read with the instant opinion.

Plaintiffs subsequently filed an Amended Motion for Judgment against these Defendants alleging breach of fiduciary duty, common law fraud, and conspiracy. As noted earlier, Mr. and Mrs. Peterson request that they each be awarded $2,400,000.00 in compensatory damages and that the Defendants suffer, jointly and severally, punitive damages in the amount of $50,000,000.00.

This pleading asserts a course of conduct of the parties continuing to the present, in which the Defendants have conspired and combined to conceal the "true facts" concerning the administration of insulin to Matthew. They portray Defendants as having manufactured a story which was conveyed to the Plaintiffs that their son had been victimized by a stranger. Defendants have raised in their responsive pleadings to this Amended Motion for Judgment significant issues related to the sufficiency of the pleadings and of the impact of the prior case upon the Plaintiff's ability to pursue the instant action. Additionally, they assert that the instant causes of action are barred by the applicable statutes of limitation. To the extent the pleadings suggest that the Defendants, other than the health care providers, may be held liable for a failure to disclose information subsequent to the institution of adversarial proceedings, the Court finds them to be insufficient as a matter of law. There is no duty on the part of an attorney to reveal the confidences of his client to a third party. While such conduct may be subject to discovery or become the basis for judicial sanction or disciplinary rule, it does not form the basis for an independent action for fraud.

However, the Court does not read the Amended Motion for Judgment to adopt such a narrow construction of the nature of the fraud alleged. Instead, the pleadings may be fairly read to assert claims against all of the Defendants for fraudulent statements intentionally

---

[1] Some of these proceedings are reported at 21 Va. Cir. 70 (1990). [Reporter's Note]

made to conceal negligence on the part of the Hospital. These statements, Plaintiffs assert, give rise to the damages alleged.

Fraud of this kind cannot be considered malpractice within the context of the care under consideration in this case. It is not merely the failure to speak which comprises the duty alleged to have been violated. Were this the case, the broad coverage of the malpractice act would seem to cover such a situation. However, as noted earlier, the Court does not take such a narrow view of the pleadings.

*Fairfax Hospital, INOVA Hospitals and INOVA Health System Foundation (hereinafter referred to as the Hospital)*

### Demurrers

The Hospital suggests that the claims against them are for malpractice and therefore are governed by the provisions of the Medical Malpractice Act, § 8.01–581.1 et seq. Accordingly, settlement of the underlying claim relating to Matthew's treatment at the statutory cap bars any further relief. It suggests that the fraud in representing misleading information to the parents constitutes:

> [a] tort based on health care or professional services rendered, or which should have been rendered, by a health care provider to a patient."

§ 8.01–581.1, Code of Virginia as amended.

As pleaded, the Hospital was a health care provider within the contemplation of the malpractice act. The exchange of information between parent and health care provider concerning an infant patient's treatment is a necessary component to the delivery of health care services. However, an alleged intentional misrepresentation concerning the commission of a crime with resultant detrimental reliance would appear to have nothing to do with health care. *Cf. Pierce* v. *Caday*, 244 Va. 285 (1992).

As the Court noted in *Hagan* v. *Antonio*, 240 Va. 347, 351 (1990):

> [t]he crucial question becomes whether the Plaintiff's allegations, as a matter of law, demonstrate that Defendant's tortious conduct was "based on health care or professional services rendered." Under Code § 8.01–581.1, "health care" is defined as "any act . . . by any health care provider for, to, or on behalf of a patient during the patient's medical care."

Thus, the withholding of vital information concerning the administration of medications by the Hospital, "stemmed from, arose from, and was based on . . . ." the administration of such medications. *See, Hagan, supra,* at 351. However, the instant claim of purposeful misrepresentation is more closely related to these situations posited in *Hagan* which the Court found to be not reasonably related to the delivery of health care. Accordingly, the Court finds that the Medical Malpractice Act does not operate to limit liability for making a false statement of the kind and in the context alleged, even were such a statement made in the delivery of health care services. Plaintiffs in this case have pleaded three separate theories of recovery against the Hospital: breach of fiduciary duty, fraud, and conspiracy. A fiduciary relationship is said to exist:

> in all cases when special confidence has been reposed in one who in equity and good conscience is bound to act in good faith and with due regard for the interests of the one reposing the confidence.

*H-B Ltd. Partnership v. Wimmer,* 220 Va. 176, 179 (1979) (citation omitted). Accordingly, one who occupies a fiduciary relationship to another is bound to disclose all facts material to their employment. *Owen v. Shelton,* 221 Va. 1051 (1981). Thus:

> incorporated in every contract between a fiduciary and his principal is an obligation, imposed by law upon the fiduciary, to disclose anything known to him which might affect the principal's decision on how to act, and like the duty to follow instructions, the duty to disclose continues, so long as [the fiduciary] relation continues.

*Owen, supra,* at 1055. The duty of disclosure is said to be incorporated in every contract between a fiduciary and his principal. *Owen, supra.*

It is important to examine the nature of Plaintiffs' claim for breach of fiduciary duty to determine whether the duty of full and fair disclosure of all matters materially affecting this infant's care arises from some special contractual arrangement between the parties or some general duty which arises by operation of law. *Glisson v. Loxley,* 235 Va. 62 (1988). If it is the latter, then it follows that the instant claim would have been finally determined by the settlement in the prior case. While Plaintiffs suggest that the Hospital's duty of disclosure was the product of a special agreement, the pleadings do not suggest the nature of the

agreement or in what manner it would impose any greater duty on this health care provider than others generally. *See, Pierce, supra.* In this connection, Plaintiffs assert:

> The parents were not patients of the Hospital. The Hospital, by special agreement, entered into a relationship of trust with the parents and assumed the obligations of honesty and fair dealing placed upon all fiduciaries. As health-care provider to Matthew Peterson and pursuant to special agreement with Mark and Linda Peterson, Fairfax Hospital owed a fiduciary duty to the parents . . . . The Hospital had a duty to expeditiously and honestly communicate to the parents all relevant information pertaining to Matthew Peterson's health care.

The Court finds that the Plaintiffs have failed to plead with specificity any duty other than a general duty which arises out of the relationship between the parents and the Hospital of full, honest, and fair disclosures of information. Breach of such a duty violates the general standard of care relative to all health care providers. No other special duty imposed by contract is stated or may be reasonably implied from the Amended Motion for Judgment. *See Pierce, supra,* at 290.

Accordingly, the Court finds that Count 1 states a claim for malpractice. It is a tort based on health care. A prior settlement of the claim at the malpractice cap would serve as a bar to recovery in this case. Plaintiffs have alleged that:

> On June 28, 1991, Fairfax Hospital and Mark, Linda and Matthew Peterson settled all then pending claims in the underlying medical malpractice lawsuit for $1,000,000.00 (the maximum allowed under Virginia law).

Therefore, the Demurrer of the Hospital to Count 1 will be sustained and that Count ordered dismissed. With respect to the allegations of fraud against the Hospital and its parent corporations, the Court agrees with the position of the Plaintiffs as to the legal sufficiency of the pleadings. However, to the extent that such fraud claims are alleged only to have arisen from a failure to divulge information concerning treatment, they, too, are subsumed by the malpractice act. As the Supreme Court noted in *House* v. *Kirby,* 233 Va. 197 (1987):

> Fraud . . . is purely a tort; it involves a misrepresentation, detrimentally relied upon, that occasions a loss.

*Kirby*, at 201 (citations omitted).

In the instant case, Plaintiffs have asserted that the Hospital and the other Defendants, in concert with one another, not only concealed information from the parents vital to the care of their son but fraudulently misrepresented the cause of his condition. In reviewing the pleadings in this case, the Court must be guided by the general principle that:

> A demurrer admits the truth of all material facts properly pleaded. Under this rule, the facts admitted are those expressly alleged, and those which may be fairly and justly inferred from the facts alleged.

*Rosillo* v. *Winters*, 235 Va. 268, 270 (1988).

As the Court has previously observed, there exists a general duty on the part of a health care provider to exercise good faith in fully disclosing to a patient (or in this case his parents) facts concerning his condition. A failure to relate such information, no matter how nefarious the purpose, constitutes a tort based on health care covered by the malpractice act. Incident to the delivery of all health care is a full, frank, and open disclosure of facts concerning the treatment of the patient. However, a misrepresentation of material facts relative to treatment, whether to disguise the truth or for some other reason to guide the actions of the unwary, does not reasonably relate to the delivery of health care services. Plaintiffs assert that:

> 112. The defendants' material misrepresentation of present fact described above: (a) were represented as true when the defendants knew they were false; (b) in such a way that a reasonable person, as alleged above, would rely upon such statements and conduct; and (c) were intended by the defendants that the Petersons [and others] rely on such statements and conduct . . . etc.
>
> 113. As a direct and proximate result of the Hospital's fraud through intentional, deliberate, malicious and reckless concealment and misrepresentation, the Petersons were injured
> . . . .
>
> 114. . . . they suffered continued mental distress and anguish in trying to understand and accept why the Hospital's sham interloper would intentionally harm their child and were forced to question if the "perpetrator" could be someone in

their circle of friends and acquaintances that harbored unrevealed ill-will, etc.

The Court finds that Plaintiffs have pleaded sufficient facts and circumstances to withstand demurrer and the bar of the settlement of the malpractice cap.

### Plea in Bar, etc., of the Hospital as to Count II (Fraud)

The Hospital asserts that the Plaintiffs' fraud claim is barred by the litigation and settlement of the prior case in which Matthew Peterson, his parents, and the Hospital were parties. Accordingly, they have filed a Plea in Bar and Pleas of Release, Accord and Satisfaction, Res Judicata, and Collateral Estoppel to Plaintiffs' Motion for Judgment.

In the prior proceeding, concluded by a settlement at the malpractice cap, Mr. and Mrs. Peterson, in their own right, and Mark Peterson as guardian and next friend of Matthew Peterson, sought, among other things, to recover damages for fraud. In that action they alleged that the Hospital committed actual and constructive fraud by concealing and failing to disclose material facts regarding the unauthorized administration of insulin. As the Court has earlier noted, absent the showing of some special agreement, such actions constitute, malpractice subject to the statutory cap. The instant action seeks recovery for fraudulent misrepresentations concerning the cause of Matthew's injuries.

The Defendant in the original action demurred to the Court alleging fraud, which Demurrer was sustained. Although invited to replead that Count, Plaintiffs elected not to do so within the time allotted, electing instead to file an amendment motion for judgment alleging a fraud Count.

The Hospital's pleas raise a substantial question as to the effect of the Court's action in the prior proceeding upon the instant action.

A demurrer, if sustained, constitutes a final adjudication of every issue which might have been litigated and determined within the issues as tendered in the pleadings. *Gimbert* v. *Norfolk Southern Railroad Co.*, 152 Va. 684 (1929); *Griffin* v. *Griffin*, 183 Va. 443 (1945).

The Hospital asserts merger as a bar to the instant proceeding. As counsel for the Hospital has observed:

> The doctrine of res judicata encompasses four preclusive effects that a final judgment may have upon subsequent litigation: Res judicata — bar, merger, direct estoppel, and

collateral estoppel . . . Collateral estoppel is the preclusive effect impacting in a subsequent action based upon a collateral and different cause of action . . . . One aspect of res judicata, usually referred to as "bar and merger," prevents repetitious suits that involve the same cause of action . . . .

M.J., *Former Adjudication or Res Judicata*, § 14 (authorities omitted). In *Bates* v. *Devers*, 214 Va. 667 (1974), the Court observed that:

res-judicata rests upon considerations of public policy which favor certainty in the establishment of legal relations . . . demand an end to litigation, and seek to prevent the harassment of parties.

*Devers* at 670 (authorities omitted).

While the doctrine of res judicata is "universally recognized" as founded upon the two maxims of the law that "a man should not be twice vexed for the same cause" and that "it is for the public good that there be an end of litigation," the doctrine:

"is technical in nature and one who asserts it cannot complain if the proceedings upon which he relies are subjected to technical scrutiny." *Patterson* v. *Anderson*, 194 Va. 557, 564 (1953). "It is essential to the application of the doctrine that the identical issue sought to be relitigated has been settled by a valid final judgment in a proceeding to which the identical persons or their privies were parties in the identical capacities in which they appear with the later litigation."

*Id.* at 565.

As the Court has previously observed, the previous action between these parties was predicated upon reliance by the parents upon information purposefully withheld concerning the condition of their son. This issue involved malpractice as defined by statute. Plaintiffs now allege that Defendant health care provider committed fraud amounting to an intentional misrepresentation as to the cause of their son's condition and its attendant effect on the parents. This is not the same issue as was resolved in the prior proceeding by the failure of the Plaintiffs to replead subsequent to the Demurrer being sustained. Furthermore, the instant action cannot be said to have been merged into the former judgment as the prior settlement related to malpractice claims and not

those of the nature alleged in this case. As noted in *Bates, supra,* at 667:

> Merger occurs when a valid and final judgment for money is entered for the plaintiff. His original cause of action is merged into the judgment and is extinguished.

Accordingly, the Plea in Bar to the fraud count will be overruled.

*Demurrer and Plea in Bar, etc., of the Hospital as to Count III (Conspiracy)*

In order to recover for common law conspiracy, the Plaintiffs must establish that they suffered damages as a result of a conspiracy formed by the Defendants. The Plaintiffs may demonstrate that the Defendants conspired to attain a lawful objective through unlawful means or an unlawful objective through lawful means. 4A M.J., *Conspiracy,* § 12.

Thus, in the instant case, not only must the Plaintiffs establish that the Defendants conspired to conceal information from the Plaintiffs concerning their child's health and care, but that pursuant to that agreement, intentional misrepresentations were made concerning his victimization. The pleadings set forth sufficient allegations in this regard both to withstand demurrer and the various pleas in bar. As ruled earlier, this Count does not simply allege a conspiracy to withhold information, an act which the court has found to be covered by the malpractice act.

All parties to a conspiracy are liable for all overt acts illegally done in pursuance thereof whether active participants or not. 4A M.J., *Conspiracy,* § 12.

Accordingly, the Demurrer to Count III is overruled. Similarly, the pleas in bar based upon *res judicata* are denied. As noted earlier, the fraud alleged in the instant action is clearly distinguishable from that alleged in the prior motion for judgment, subsequently amended and subject to a Final Order of dismissal as to all pending claims.

The theories of collateral estoppel and direct estoppel have not been asserted by the Hospital and are therefore inapplicable to this case.

*Demurrers of Gerald R. Walsh and Walsh & Cremins, P.C.*

While Plaintiffs previously included these Defendants in their claim for breach of fiduciary duty, they have been omitted from such claim in the Amended Motion for Judgment. Defendants Walsh and Walsh & Cremins, P.C., continue to assert however, that the pleadings fail to

establish a duty owed to the Plaintiffs by these Defendants such that they might recover for fraud and conspiracy. As noted earlier however, the clear import of the Amended Motion for Judgment is not the failure to disclose but the fraudulent conduct of the various Defendants, acting in concert, in stating to the Plaintiffs that their son was the victim of a crime. The Plaintiffs assert such fraudulent statements were made to mislead the Plaintiffs and to conceal the true cause of the injuries to their son. Also, as noted earlier, the Plaintiffs assert damages which naturally form such assertions of misconduct of an interloper in the Hospital.

Plaintiffs do not merely assert that counsel for the Hospital expressed an opinion concerning the cause of Matthew's injuries. To the contrary, they assert that the misrepresentation was of a material fact which Plaintiffs might reasonably be expected to act upon. The pleadings in the instant case are distinguishable from those in *Ayyildiz* v. *Kidd*, 220 Va 1080 (1980).

In *Ayyildiz*, the Court was required to address the responsibility of a lawyer to third parties within the context of an action for malicious prosecution and negligence. In addressing the negligence claim, the Court found that the lawyer owed no duty such as might give rise to an action for professional negligence against the lawyer. The Code of Professional Responsibility does not form the basis of a private cause of action.

The allegations in this case do not involve negligence or a claim founded on the Code of Professional Responsibility. Any difficulty of proof of damages connected with the making of false statements is best left to the trial of this case or by way of a motion for summary judgment. Thus, Defendants' arguments upon their assertions that "Plaintiffs did not rely on anyone's statements about the incident" cannot be addressed on demurrer.

As this Court observed in its earlier letter opinion, Plaintiffs failed to assert a basis upon which they might rely upon the silence of Mr. Walsh. Insofar as mere silence is concerned, the Court agrees with the position taken by counsel for the Defendant that within the context of these adversarial proceedings, the duty of Walsh arises out of the discovery process, and may be subject to discipline pursuant to rule of court or statutory sanction.

This Court, however, disagrees with the position taken by the Defendants that Plaintiffs' allegations, when read together, constitute no

more than a mere expression of opinion rather than a material misrepresentation of fact. *viz.* "the Hospital informed the Petersons that the injury to their son was conclusively the result of an unknown third party's intentional act and not any fault on the part of the Hospital." (Paragraph 47 of the Amended Motion for Judgment.) Whether the statements made were opinion or taken by the Plaintiff to be but mere statements of opinion is for the determination at trial or upon a motion for summary judgment. *Poe* v. *Voss*, 196 Va. 821 (1955).

As noted earlier, the Court is of the opinion that the pleadings set forth sufficient facts to withstand demurrer as to the damages claimed. Additionally, settlement of the prior claim at the malpractice cap did not settle the instant claim for damages. Defendants take a rather narrow construction of the damage claim which the Court believes is sufficient to withstand demurrer.

While Defendants assert that Plaintiffs have failed to assert sufficient factual allegations of an underlying fraud and that Plaintiffs were damaged as a result of such conspiracy, the Court believes that the pleadings belie such a construction. As counsel for the Defendants has noted:

> The gist of the civil conspiracy is the damage caused by the acts committed in pursuance of the formed conspiracy and not the mere combination . . . to accomplish an unlawful purpose or use unlawful means . . . . No cause of action exists without the resulting injury, and damage produced must arise as the effective result of the conspiracy.

*Gallop v. Sharp*, 179 Va. 335 (1942). In ruling on the responsive pleadings of the Hospital, the Court has already noted in what manner the pleadings conform to these requirements.

The Court has already overruled the Demurrer of the Defendants predicated on the theory of intracorporate immunity. Such a defense to the conspiracy count is best raised at a trial on the merits or by way of a motion for summary judgment. Plaintiffs do not seek relief based upon the existence of a civil conspiracy to damage their business. The Court does not find that the General Assembly has preempted by statute, a plaintiff's right to seek recovery for common law conspiracy. Accordingly, the Demurrer based upon §§ 18.2–499 and 18.2–500 is overruled.

### Demurrer of Crews & Hancock

As with Defendants Gerald Walsh and Walsh and Cremins, P.C., Plaintiffs in their Amended Motion for Judgment have withdrawn their claim for relief based upon a breach of fiduciary duty against this Defendant. Accordingly, that claim need not be addressed herein.

Defendant Crews & Hancock asserts that it owed no duty to Plaintiffs and thus the Plaintiffs' claim for fraud must fail. However, as with the other Defendants, this action asserts a case, not of negligence or withholding information, but of compliancy in the fabrication of fraudulent representations concerning the cause of Matthew's condition. The pleadings assert not only that Crews & Hancock ratified the actions of Mr. Walsh, but complied and acted in concert in "disseminating deceitful, misleading information."

The Court has already alluded to the fact that the law firm was under no duty to disclose privileged information to the Petersons. Furthermore, the Court has stated that the instant pleading was not predicated on a violation of a disciplinary rule, rule of court, or statutory sanction. This case, as pleaded, does not present a case of fraud for a failure to disclose but instead for intentional misrepresentation of an existing fact.

Furthermore, the Court finds that the pleadings state sufficient facts and circumstances as to the alleged conspiracy and damages to withstand demurrer. As noted earlier, the allegations of the Amended Motion for Judgment, which for purposes of ruling on the Demurrer the Court must consider as true, state that Crews & Hancock ratified the actions of the co-conspirators as well as actively participating in the conspiracy to defraud and that the damages are alleged to have been caused by that fraud and conspiracy. As noted earlier by the Court, the allegations of damages arising from the fraudulent misrepresentations are sufficient to withstand demurrer. Accordingly, the Demurrer of Crews & Hancock will be overruled. The Court's earlier comments regarding settlement at the malpractice cap and of the nature of the damages alleged, are equally applicable to the assertion of Crews & Hancock that the damages result from a tort based on health care. *Bulala v. Boyd*, 239 Va. 218 (1990) (parents' claim for emotional distress derivative of child's claim).

Crews & Hancock additionally raises the issue of whether Plaintiffs may recover damages for emotional distress. If accepted as true for purposes of demurrer, the facts pleaded would indicate that the Defen-

dants conspired to defraud and actively participated in defrauding the parents of a hospitalized infant into believing to their detriment that their son was victimized by a third person while in the Hospital. Such facts, if proven, would justify an award of damages for emotional distress. *Russo v. White*, 241 Va. 23 (1991). As the Court noted in *Russo* at 26:

> emotional distress resulting from a non-tactile tort may be compensated if the plaintiff alleges, and proves by clear and convincing evidence, that: the wrongdoer's conduct is intentional or reckless; the conduct is outrageous and intolerable; the alleged wrongful conduct and emotional distress are causally connected; and, the distress is severe (citation omitted).

Accordingly, the Plaintiffs' have raised factual issues with respect to damages not susceptible to decision on demurrer.

### Demurrer of The Virginia Insurance Reciprocal

The Court finds that the Amended Motion for Judgment states a cause of action against the Virginia Insurance Reciprocal. Like the other Defendants, it is alleged that agents of the Insurance Reciprocal, acting in concert with the other Defendants, conspired to defraud and participated in defrauding the Plaintiffs by representing that Matthew Peterson had been the victim of the actions of a third party while in the Hospital.

As noted earlier, the Court does not consider the failure of the Reciprocal to report to the Petersons is actionable fraud. No duty to speak is alleged or to be inferred from the pleadings. To the extent such claims are for discovery alone, as suggested by the Reciprocal, they do not rise to the level of an independent cause of action.

The Virginia Insurance Reciprocal asserts that, "[e]ven if the Petersons allege that TVIR participated in concocting an intruder story, the Petersons' fraud claim fails because the elements of fraud are not alleged." They then allude to various allegations in the motion for judgment from which one might infer a lack of reliance by the Plaintiffs in the statements concerning an interloper. While the Plaintiffs assert in their Amended Motion for Judgment that, "they doubted that the Hospital had been truthful and forthcoming in their explanation," the Court does not find that when read in conjunction with the other pleadings that, "[t]his admission alone destroys the reliance element required to successfully plead and prove fraud." The Court is unwilling

at this stage of the proceeding to equate doubt with a failure to believe or lack of reliance.

The conspiracy Count alleged an actionable fraud, that is the Virginia Reciprocal in corroboration with the other Defendants used fraudulent misrepresentation to conceal negligence of the Hospital. As noted earlier, a civil conspiracy is a combination of two or more persons, by some concert of action, to accomplish some criminal or unlawful purpose, or to accomplish some purpose, not in itself criminal or unlawful, by criminal or unlawful means. *Hechler Chevrolet v. General Motors Corp.*, 230 Va. 396, 402 (1985). Not only do the Plaintiffs assert that this Defendant conspired with the other Defendants to breach the fiduciary duty owed by the Hospital to the Plaintiffs (the purpose) but in "authorizing and ratifying" the actions of the other Defendants (the means). As pleaded, the latter would clearly involve the use of the interloper theory to conceal information concerning treatment. While in the case of the former any damages suffered may have been merged into the settlement at the malpractice cap, this is not true of the latter (the means). As noted earlier, the Plaintiffs have alleged sufficient facts to withstand demurrer as to the damages which would proximately flow from such fraud.

The Court believes that the Reciprocal's challenge to the sufficiency of the factual allegations concerning conspiracy must be denied when the pleadings, and the legitimate inferences arising therefrom, are considered in the light most favorable to the Plaintiffs.

### Claim for Punitive Damages (Count IV) Common to All Defendants

Without addressing those matters raised in the Pleas of the Statute of Limitations, the Court believes the pleadings state sufficient facts, if proven, to justify an award of punitive damages against each of the Defendants.

Accordingly, the Demurrers of the Defendants to the claims for punitive damages are denied.

### Bar of the Statute of Limitations Common to All Defendants

As counsel have observed, an action for fraud accrues when the fraud is discovered or when, by the exercise of due diligence, it should have been discovered. § 8.01–249(1), Code of Virginia, as amended. An action for damages arising from fraud, shall be brought within two years after the cause of action accrues. § 8.01–243, Code of Virginia, as amended.

As counsel have observed, the basis of a civil action for conspiracy is the wrong which is done under the conspiracy and results in damage to the Plaintiff. *Gallop v. Sharp*, 179 Va. 335 (1942).

The original Motion for Judgment in the instant case was filed on January 16, 1992. While a review of the pleadings in this case and in the earlier case strongly suggests that Plaintiffs' claim may be time barred, they do not contain sufficient facts upon which the Court may determine when the Plaintiffs discovered, or by the exercise of due diligence should have discovered, that the Hospital's explanation concerning the cause of their son's condition was fraudulent. The Court agrees with the arguments of counsel, that should the fraud claim be time barred, the conspiracy claim must likewise fail, as the underlying fraud is what makes the conspiracy actionable. Otherwise, the general one year statute would apply. § 8.01–248, Code of Virginia, as amended.

Accordingly, the Court will afford to the Defendants an evidentiary hearing on the Special Pleas of the Statute of Limitations as the pleas cannot be resolved without such a hearing.

*Summary*

In summary, the Court will:

(1) Sustain the Demurrer to Count I (breach of fiduciary duty) against the Hospital and its parent organization and dismiss the Count;

(2) Overrule the Demurrers of the Defendants to the remaining Counts (fraud, conspiracy, punitive damages) as they assert claims for damages arising out of alleged statements made to the Petersons concerning the actions of a third party in causing their son's injuries and damages;

(3) Overrule the Special Pleas of the Hospital and of its parent organization of res judicata, etc., as more fully set forth above; and

(4) Defer a ruling on the Pleas of the Statute of Limitations and set the matter for an evidentiary hearing. *Gilmore v. Basic Industries*, 233 Va. 485 (1987).