SYBIL G. GLISSON

V.

SIDNEY S. LOXLEY, M.D.

Record No. 850328

March 4, 1988

Present: All the Justices

*Carlton F. Bennett (Beverly A. Yeskoski*, on briefs), for appellant.

*Carolyn P. Oast (John A. Heilig; Kimberlea Rea Cowley; Heilig, McKenry, Fraim & Lolar*, on brief), for appellee.

COMPTON, J., delivered the opinion of the Court.

In this action brought by a patient against her physician, we determine whether the trial court correctly ruled that it lacked subject-matter jurisdiction. Our decision depends on an interpretation of the statutes relating to the Virginia medical malpractice review system.

Appellant Sybil G. Glisson sued appellee Sidney S. Loxley, M.D., in a two-count motion for judgment filed August 24, 1984. In the first count, the plaintiff alleged the defendant was guilty of a breach of contract on September 8, 1982. In the second count, the plaintiff alleged the defendant committed a battery upon her on the same date.

Subsequently, the defendant filed a motion to dismiss, asserting that both counts of the motion for judgment "are based in fact upon medical negligence." The defendant further asserted that the plaintiff had not complied with the statutory provision requiring a

notice of claim to be filed before suit is brought in a malpractice action. Thus, the defendant contended, the court was without jurisdiction to hear the case.

The trial court agreed with the defendant and sustained the motion. We awarded the plaintiff this appeal from the February 1985 order dismissing the action.

No evidence was taken on the motion to dismiss. Apparently, the trial court decided the matter on the pleadings, representations of counsel, and memoranda of law. The only facts properly before us are those recited in the motion for judgment. Thus, we will treat those factual allegations as on demurrer for the purpose of reviewing the trial court's ruling on the motion to dismiss.

In the first count, the plaintiff alleged that the defendant was a duly licensed physician practicing in Chesapeake. She asserted that, in July 1982, she was examined for pain and weakness in her right knee in the emergency room of a local hospital. She alleged that after the examination she was discharged. She asserts that she "consulted" the defendant four days later, at which time he diagnosed her condition as a tear of the medial meniscus and "recommended surgery to correct the problem."

The plaintiff further alleged that she and the defendant entered into a "special," oral contract under which the defendant was to perform surgery. The plaintiff alleged,

"The terms of the contract were as follows: the defendant was to perform an arthroscopy[1] on the plaintiff's right knee for the purpose of diagnosis only. If the arthroscopy revealed a torn medial meniscus, confirming the defendant's diagnosis, the defendant was to do an arthrotomy[2] for the purpose of repair or removal of the medial meniscus."

The plaintiff also alleged, "The parties specifically agreed that the defendant would not perform arthroscopic surgery upon the plaintiff."

Continuing, the plaintiff asserted that the defendant performed a diagnostic arthroscopy upon the plaintiff "according to the

---

[1] Diagnostic knee joint arthroscopy "is a technique of filling the joint with fluid or air, then inserting a small telescope with an attached light source." 2 C. Frankel, J. Zimmerly & R. Patterson, Lawyers' Medical Cyclopedia § 11.28b, at 67-68 (1979) (Supp. 1984) (hereinafter Frankel).

[2] "An arthrotomy is a surgical opening of a joint." 6 Frankel § 41.15, at 204.

terms of their contract" on September 8, 1982, discovered a torn medial meniscus, and performed arthroscopic surgery[3] in breach of their "special" contract. The plaintiff further asserted that because she did not improve following the September surgery, she was forced to undergo additional surgery in December 1982, during which an arthrotomy was performed and the torn meniscus was removed. The plaintiff sought judgment against the defendant for $100,000, asserting she "was caused to suffer severe physical pain and discomfort, additional medical expenses, lost wages and mental anguish."

In the second count, the plaintiff asserted the arthroscopic surgery was performed without her consent and constituted a battery upon her. She alleged the same elements of damage as particularized in the first count.

The issues raised in this appeal involve several statutes which were among the laws enacted by the 1976 General Assembly to impose a limitation on the liability of health care providers in medical malpractice cases. Acts 1976, ch. 611 at p. 784. Code § 8.01-581.2 provides, "No action may be brought for *malpractice* against a health care provider unless the claimant notifies the health care provider in writing by registered or certified mail prior to commencing the action." (Emphasis added.) The remainder of the statute sets forth procedural steps for a review of the claim by a medical malpractice review panel.

According to Code § 8.01-581.1, the term "malpractice" means "any *tort* based on *health care* or professional services rendered, or which should have been rendered, by a health care provider, to a patient." (Emphasis added.) The statute provides that the term "health care" means "any act, or treatment performed or furnished, or which should have been performed or furnished, by any health care provider for, to, or on behalf of a patient during the patient's medical diagnosis, care, treatment or confinement."

Upon the first count, the plaintiff argues that she has sued in contract and that in order to be an action for "malpractice" under the malpractice statutes, the plaintiff's action must be in tort based on health care. She contends that the unambiguous lan-

---

[3] "Operative arthroscopy is only well accepted in the knee joints. The . . . arthroscopist is able to trim cartilage with a mechanized shaver, remove loose pieces of cartilage or bone, remove torn parts of the menisci . . . ." 2 Frankel at Supp. 68.

guage of the malpractice statutes excludes actions for breach of contract, and that the term "tort" in the statute cannot be interpreted to include a breach of contract. Thus, she contends, the trial court erred in ruling that she was required to comply with the statutory notice provision prior to suing at law.

The defendant argues that the trial court correctly ruled that the plaintiff's failure to comply with the notice requirement of § 8.01-581.2 rendered it without jurisdiction in this case. Defendant contends that the plaintiff's "nominally styled 'breach of contract' count for personal injuries" actually is an action sounding in tort and thus is covered by the malpractice statutes.

In addition, the defendant argues that the definitions in the malpractice statutes demonstrate a clear intention that actions arising from contractual health care services fall within the ambit of the statutes and are subject to the notice provision. He emphasizes language in § 8.01-581.1 that "health care" means "any act, or treatment performed or furnished, *or which should have been performed or furnished.*" He says the italicized words encompass and contemplate contract breach. Thus, he argues, the malpractice statutes are controlling over "so-called 'contract' claims."

■ Also, defendant argues that the definitional portions of the malpractice statutes codify this Court's earlier interpretation of a health care provider's relationship with the patient. For example, he notes, we have enunciated a patient's right of action against a hospital which acts through its agents (intern physicians and nurses) as follows: "Any negligent performance of their duties, whether by lack of professional equipment or lack of professional skill, constituted a breach of the contract made by their employer." *Stuart Circle Hospital Corp. v. Curry*, 173 Va. 136, 147, 3 S.E.2d 153, 157 (1939). Defendant contends that the Court "predicated recovery for breach of the hospital's 'contract' with its patient upon a showing of negligence, i.e., that negligent discharge of the interns' duties to render care in compliance with their professional standards constituted a breach of contract with the patient." Thus, the defendant says, "The Court inextricably linked contract and tort principles in its interpretation of the special professional relationship between the physician and his patient."

We disagree with defendant's arguments on the first count. To adopt defendant's position would transform the Court's role in this case from statutory interpreter to judicial legislator.

■ The whole malpractice statutory scheme focuses on tort and not breach of contract. The word "tort" has a settled meaning in Virginia. "A tort is any civil wrong or injury; a wrongful act (not involving a breach of contract) for which an action will lie." *Jewett v. Ware*, 107 Va. 802, 806, 60 S.E. 131, 132 (1908) (internal quotation marks omitted).

"Tort" is also defined as the violation of some duty owing to the plaintiff imposed by the general law or otherwise. Generally, the "duty must arise by operation of law and not by mere agreement of the parties." Black's Law Dictionary 1335 (5th ed. 1979). Stated differently, a "tort" is a "legal wrong committed upon the person or property independent of contract." *Id.*

■ Turning to the statutory framework, we find an important declaration in the preamble to the 1976 enactment which established the medical malpractice review system. In the statement of legislative purpose, the General Assembly specified that the "significant problem" addressed necessitated "the imposition of a limitation on the liability of health care providers *in tort actions* commonly referred to as medical malpractice cases." Acts 1976, ch. 611 at p. 784 (emphasis added). Clearly, the legislature was directing its attention to torts and not breaches of contract.

Consistent with this statement of legislative intention, the statutory provisions deal exclusively with the tort concept — duty, violation of duty, proximate cause, and damages. *See, e.g.*, Code § 8.01-581.7. As pertinent to this case, the key term is "malpractice." Under § 8.01-581.2, no action may be brought for "malpractice" without prior statutory notice. According to § 8.01-581.1, "malpractice" means "any tort based on health care." Had the General Assembly meant to include breach of contract actions within the definition of "malpractice," surely it would have so provided.

Indeed, we note that in the Interim Report of the Commission To Study The Costs and Administration of Health Care Services, dated February 19, 1976, the legislative committee which recommended establishment of the malpractice review system suggested the following definition of "malpractice": "[A]ny tort *or breach of contract* based on health care or professional services rendered, or which should have been rendered, by a health care provider, to a patient." 3 House and Senate Doc., 1976 Sess. at 21 (emphasis added). The enactment, adopted within weeks of the report, contained the recommended definition verbatim except that the words

"or breach of contract" had been eliminated. A legitimate inference to be drawn from this omission is that the General Assembly decided to exclude contract claims from the malpractice review system.

We reject defendant's contention that the language "should have been" furnished, performed, or rendered, appearing in several of the statutory definitions, contemplates contract breach and thus indicates a legislative intention that the malpractice statutes control contract claims. The "should have" language is classic tort verbiage — the automobile driver saw or "should have" seen; the physician diagnosed or "should have" diagnosed in the exercise of ordinary care.

■ But is this a pure breach of contract action or is it actually a tort action disguised as a breach of contract action? The answer lies in an analysis of the factual allegations made by the plaintiff. We hold that the substance, as well as the form, of the first count of the motion for judgment states a claim for breach of contract and not a claim in tort.[4]

According to the allegations, as the plaintiff argues, the defendant was under no duty independent of their special contract to refrain from performing arthroscopic surgery on the plaintiff's knee. If the defendant had a general duty independent of the contract, then the action should be construed as one in tort. Instead, the defendant's duty to perform one type of operation and to refrain from another was based solely upon the special, oral agreement between the parties.

■ Moreover, the defendant was under no duty independent of their special contract to perform a specified type of operation. As a physician, he merely was under a duty to exercise reasonable care in determining the best procedure to be employed and to exercise the appropriate degree of care in performing the operation he recommended. As the plaintiff observes, she does not allege that a reasonably prudent physician in the Commonwealth should have chosen one type of surgical procedure over the other; nor does she allege that the defendant was negligent in the manner in which he performed the surgery. She does allege, however, that a

[4] The plaintiff says the defendant has wrongly characterized her action as one for lack of informed consent when, in fact, she alleges no consent at all.

special agreement existed between the parties, which the defendant breached.

We are not persuaded by defendant's effort to have us hold, in effect, that because the claim arises in the context of a physician-patient relationship, the action is actually one sounding in tort, is covered by the malpractice statutes, and is subject to the notice provision. Defendant relies on statute of limitations cases where we have said that the object of an action and not its form determines which statute of limitations is applicable. *See, e.g., Friedman* v. *Peoples Drug Store*, 208 Va. 700, 160 S.E.2d 563 (1968); *Birmingham* v. *Chesapeake & Ohio Ry.*, 98 Va. 548, 37 S.E. 17 (1900). Those actions, however, were based on negligence. Here, as we already have pointed out, the plaintiff has not sued in negligence.

■ We likewise are not persuaded in our task of statutory interpretation by the language in the *Stuart Circle Hospital* case, albeit recognizing that a physician's duty "springs from a consensual transaction," an express or implied contract. *Lyons* v. *Grether*, 218 Va. 630, 633, 239 S.E.2d 103, 105 (1977). Again, the action in *Stuart Circle Hospital* was based on negligence and not breach of contract. And the mere fact that plaintiff has sought recovery for pain and suffering does not, standing alone, convert this contract claim into an action in tort. At this stage of the proceeding, the question whether damages for pain and suffering may be recovered in an action for a breach of contract is mainly irrelevant. That question will have to be decided when the case goes to trial.

■ Consequently, we hold the trial court erred in dismissing the first count of the motion for judgment. In contrast, however, we hold the trial court did not err in dismissing the second count.

The plaintiff alleged that the defendant committed a battery upon her. A battery is a tort. Prosser on The Law of Torts 3 (5th ed. 1984). "Malpractice" means "*any* tort based on health care." Therefore, a battery arising from health care is "malpractice" within the clear meaning of the malpractice statutes and the required notice should have been given.

For these reasons, the judgment of the trial court will be reversed and the case remanded for further proceedings on the first

count of the motion for judgment. The trial court's action in dismissing the second count will be affirmed.

*Affirmed in part,*
*reversed in part,*
*and remanded.*