# Karyn M. Hagan

## v.

# Rodolfo Antonio, M.D.

Record No. 900257

November 9, 1990

Present: All the Justices

*Stephen H. Moriarty (Gary V. Davis,* on brief), for appellant.
*John J. Brandt (Robert S. Corish; Slenker, Brandt, Jennings &
Johnson,* on brief), for appellee.

JUSTICE COMPTON delivered the opinion of the Court.

In this appeal, we consider whether alleged improper sexual conduct by a physician during his examination of a patient was "based on health care or professional services rendered," within the meaning of the Virginia Medical Malpractice Act (the Act), thus obligating the patient to give a notice of claim under the Act prior to instituting a common-law action for damages against the physician.

On July 28, 1989, appellant Karyn M. Hagan brought this action against appellee Rodolfo (or R*u*dolfo) Antonio, M.D., and others, for damages allegedly occurring during a physical examination conducted by the defendant on July 30, 1987 in connection with plaintiff's employment by Fairfax County. The defendant filed a demurrer and motion to dismiss, asserting that the motion for judgment was insufficient in law because the plaintiff had failed to allege that she had given the defendant notice "of the alleged malpractice in writing" prior to commencement of the action.

Upon consideration of argument of counsel, the trial court sustained the demurrer and the motion. We awarded the plaintiff this appeal from the December 1989 order below dismissing with prejudice the plaintiff's case against the defendant.

We shall examine the allegations of the plaintiff's motion for judgment according to the familiar principle that a demurrer admits the truth of all material facts properly pleaded. On brief and

during oral argument of the appeal, defendant disputes the accuracy of plaintiff's charges and mentions facts wholly at odds with the plaintiff's account of the incident. At this stage of the proceeding, however, the defendant's recitation of the facts must be disregarded because the demurrer tests the legal sufficiency of the plaintiff's pleading only.

The plaintiff alleges that, in connection with her employment as a "civilian" with the Fairfax County Police Department, she was required by the County to submit to a "pre-employment physical" to be conducted by defendant. She asserts that, prior to the scheduled date for the exam, she was told by County officials that the County would accept records of examinations conducted by her private physician in lieu of having certain tests ("a pap smear, a pelvic examination and a breast examination test") performed by defendant. The plaintiff further alleges that upon arrival for the examination at the County Medical Exam Unit, she brought records of her previous tests which "were all within normal limits."

She asserts that she was examined preliminarily by a nurse "who took her blood, blood pressure, urine sample, and weight and tested her hearing." She further alleges that when she arrived in the room where she was to be examined by defendant, no nurse or other attendant was present. She asserts that defendant stated that she must submit to a breast examination, although he agreed to accept the results of the other tests performed by her private physician. According to plaintiff, she then asked that a nurse be present in the room during the examination and defendant granted this request.

The plaintiff further alleges that when defendant examined her breasts, "he ran his fingers over the Plaintiff's nipples and asked her if she was excited." The plaintiff asserts that defendant did not conduct "a breast examination of the type that had been conducted by prior obstetricians and gynecologists on your Plaintiff."

As the result of defendant's conduct, plaintiff alleges, she "became extremely emotional and upset and started to cry." Claiming that defendant was guilty of an assault and battery as well as an intentional infliction of emotional distress, plaintiff alleges that she is entitled to recover damages because the "examination did not constitute a proper medical examination, but rather was done to satisfy [defendant's] prurient interests, was accompanied by

sexual innuendos uttered by [defendant] and was extremely offensive to the Plaintiff."

On appeal, the plaintiff contends that the trial court erred in sustaining the demurrer. She maintains that the Act "does not address nonmedical conduct, and does not legislate a blanket. of procedural protection for all acts no matter how inappropriate, illegal or disgraceful, merely because the perpetrator is a physician and his victim is a patient."

The plaintiff argues that the question whether defendant's acts constituted "health care" within the meaning of the Act, thus triggering the notice requirement, is an issue for the trier of fact to decide, given the allegations of the motion for judgment. If the issues raised by these allegations are not left to the fact-finder, the plaintiff urges, "then the statutory definitions are rendered meaningless and any and all intentional tortious misconduct will be shielded by [the Act]." We do not agree that the trial court erred.

The applicable statutory language is clear .and unambiguous. Thus, as in two prior cases involving similar issues, we. will apply the plain meaning of the Act's language to the facts of this case. *See Gonzalez* v. *Fairfax Hospital System*, 239 Va. 307, 389 S.E.2d 458 (1990); *Glisson* v. *Loxley*, 235 Va. 62, 366 S.E.2d 68 (1988).

The following pertinent portions of the Act bear upon the issue presented. Code § 8.01-581.2(A) provides, in part: "No action may be brought for malpractice against a health care provider unless the claimant notifies the health care provider in writing . . . prior to commencing the action." There is no dispute that this plaintiff did not give the required notice. But, is this an action for "malpractice" within the meaning of the Act?

According to Code § 8.01-581.1, the term "malpractice" is defined as "any tort based on health care or professional services rendered, or which should have been rendered, by a health care provider, to a patient." There is no dispute that this defendant was ·a health care provider. Likewise, it cannot be disputed that assault and battery as well as intentional infliction of emotional distress are "torts," and qualify as "any" tort under the Act. *See Glisson*, 235 Va. at 69, 366 S.E.2d at 72.

The crucial question then becomes whether the plaintiff's allegations, as a matter of law, demonstrate that defendant's alleged tortious conduct was "based on health care or professional services rendered," within the meaning of the Act. Under Code

§ 8.01-581.1, "health care" is defined as "any act . . . by any health care provider for, to, or on behalf of a-patient during the patient's medical . . . care." The plaintiff does not dispute that medical "care" includes performance of a physical exam. If the foregoing query is answered affirmatively, this qualifies as an action for "malpractice" under the Act and the suit is barred because notice was not given to the defendant as required by § 8.01-581.2(A).

Reference to the plaintiff's own language in the motion for judgment clearly demonstrates that defendant's conduct was "based on" health care or professional services rendered. For example, the plaintiff alleges that the "pre-employment physical took place on July 30, 1987, and was performed by the Defendant." Also, she asserts that after the nurse conducted "a preliminary examination," she was instructed to enter a room where the defendant "would complete the physical examination." After reciting the fact of the request for a nurse to be present during the breast examination, the plaintiff alleges that her breasts "were examined by" the defendant.

■ When the statutory definitions are applied to the facts alleged, the conclusion must be that defendant's conduct, legitimate or improper, was "based on" an "act" by a health care provider to "a patient during the patient's medical . . . care." In other words, the defendant's conduct, according to the allegations, stemmed from, arose from, and was "based on" the performance of a physical examination.

■ In a rather frenetic argument, the plaintiff posits that an affirmance of the trial court's decision will mean that any time a physician, during examination or treatment of a patient, commits any one of a number of criminal acts which could be classified as torts, such as robbery or rape, such conduct could be classified as "health care" and thus be "malpractice." The answer to such a suggestion should be obvious, aside from the fact that this is not such a case. It is undisputed that a breast examination, including the touching, is an inseparable part of a typical, complete physical examination of a woman. Rape or robbery during such an examination, or during treatment of a patient, could never arguably be classified as an inseparable part of examination or treatment.

This conclusion is illustrated by our two prior cases on the issue. In *Glisson*, an alleged battery arising from a patient's lack of consent for performance of arthroscopic surgery was held to have

arisen from health care and to be "malpractice." 235 Va. at 69, 366 S.E.2d at 72. In *Gonzalez*, the patient's toe was lacerated during a physical therapy session by a sharp metal object inside a whirlpool tub. We rejected the plaintiff's contention that the action was not one for "malpractice," but was a claim merely based upon "ordinary, traditional negligence." 239 Va. at 309-10, 389 S.E.2d at 459-60. In both cases, the respective claims were based upon conduct that was an inseparable part of the health care being rendered and, under the broad language of the Act, amounted to "malpractice," requiring the statutory notice.

■ In response to the plaintiff's demand that we read the Act more narrowly, we repeat what was said in *Gonzalez*. "When there is a claim that the language employed in a statute is too broad in its scope, the fault, if any, should be corrected by the General Assembly, not by this Court." 239 Va. at 310-11, 389 S.E.2d at 460.

Accordingly, the judgment of the trial court will be

*Affirmed.*

JUSTICE HASSELL, with whom JUSTICE WHITING and JUSTICE LACY join, dissenting.

I dissent because I do not believe that the Medical Malpractice Act, Code § 8.01-581.1 *et seq.*, applies to acts of sexual molestation committed by a health care provider when such acts would constitute the crime of sexual assault.

As the majority correctly observes, the dispositive issue in this appeal is whether Dr. Antonio provided health care to Ms. Hagan at the time he allegedly sexually molested her. It is true that the Act defines health care as "any act . . . by any health care provider for, to, or on behalf of a patient during the patient's medical . . . care." Code § 8.01-581.1. However, I do not interpret the phrase "any act" as broadly as the majority because to do so would cause illogical consequences which the Act clearly was not designed to achieve.

The Act was passed by the General Assembly in response to the *medical malpractice insurance crisis.* The purpose of the Act was to curtail the escalating costs of medical malpractice insurance premiums so that Virginia's health care providers would be able to afford such coverage. *See* Senate Document No. 22, entitled Re-

port of the Commission to Study the Costs and Administration of Health Care Services to the Governor and the General Assembly of Virginia. The Act, among other things, creates a process which is intended to resolve colorable claims of medical malpractice against health care providers and discourage the pursuit of frivolous claims. To accomplish these objectives, the Act grants numerous protections to health care providers which are not enjoyed by other classes of defendants. *See Etheridge* v. *Medical Center Hospitals*, 237 Va. 87, 376 S.E.2d 525 (1989).

Courts are not at liberty to rewrite statutes because that is the function of the legislature. However, we have repeatedly said that "[w]hile in the construction of statutes the constant endeavor of the courts is to ascertain and give effect to the intention of the legislature, that intention must be gathered from the words used, unless a literal construction would involve a manifest absurdity." *Barr* v. *Town & Country Properties*, 240 Va. 292, 295, 396 S.E.2d 672, 674 (1990); *Watkins* v. *Hall*, 161 Va. 924, 930, 172 S.E. 445, 447 (1934); *See also Simpson* v. *Simpson*, 162 Va. 621, 638, 175 S.E. 320, 327 (1934); *Ingram* v. *Harris*, 174 Va. 1, 9, 5 S.E.2d 624, 627 (1939) (Hudgins, J., dissenting).

The majority's literal construction of the Act will create illogical results which the General Assembly did not intend. For example, under the majority's holding, a physician who commits an act of sexual molestation on a young boy during the course of a urological examination would be entitled to the protection of the Act. Similarly, an obstetrician who sexually assaulted a female patient during a pelvic examination would also be entitled to the protection of the Act. Certainly, the General Assembly did not intend such a broad interpretation of the Act.

Neither *Gonzalez* v. *Fairfax Hospital System*, 239 Va. 307, 389 S.E.2d 458 (1990) nor *Glisson* v. *Loxley*, 235 Va. 62, 366 S.E.2d 68 (1988), relied upon by the majority, involved acts of sexual molestation committed by a physician. Rather, they involved issues of negligence.

The tort alleged by Hagan was not a tort based upon the provision of health care but rather a tort arising out of Dr. Antonio's prurient interests and actions. This alleged tort falls outside of the scope of the Act. Accordingly, I would reverse the judgment of the trial court and remand the case for a trial on the merits.