## CIRCUIT COURT OF SMYTH COUNTY

Robert Prater, Jr.,
Administrator, etc.

v.

Smyth County Community Hospital

January 30, 1995

Case No. (Law) 93-4050

BY JUDGE CHARLES H. SMITH, JR.

This matter is pending before the court upon the defendant's special plea of the statute of limitations and demurrer to the pleadings. The matter was argued before the court on July 27, 1994. At that time, the court requested counsel to file memoranda in support of their respective positions. Those memoranda have been filed and the court has reviewed them along with the pleadings, exhibits and authorities cited by counsel. In consideration of all of which, including counsel's arguments, the court finds as follows.

The plaintiff filed this wrongful death action on May 21, 1993, as administrator of the estate of his deceased father, who died in the Smyth County Community Hospital on February 3, 1991. The motion for judgment originally contained three counts, but Count Three was nonsuited by order of this court entered on August 18, 1994. Previous to filing the motion for judgment, plaintiff filed a notice of claim under the Virginia Medical Malpractice Act on January 22, 1993. The remaining counts of the motion for judgment allege that plaintiff's decedent was negligently treated and/or supervised by personnel and/or by defective products provided by the defendant resulting in the death of plaintiff's decedent in the hospital on February 3, 1991. Specifically, Count One of the motion for judgment sounds in tort and alleges that plaintiff's decedent was fatally injured when the restraining rail of his bed collapsed causing him to fall to the floor and fracture his neck while he was in the bed and in the process of giving a medical history statement to a nurse. Count Two of the motion

for judgment sounds in contract and alleges the death of plaintiff's decedent was due to a breach of an implied contract for the defendant to provide adequate care, facilities and equipment for the decedent's treatment.

The defendant's plea of the statute of limitations is based upon § 8.01-244 of the Code which requires actions for wrongful death be brought within two years after the death of the injured person. As noted, death occurred on February 3, 1991, and the suit was not filed until May 21, 1993. The defendant further contends that the plaintiff cannot rely upon the tolling provisions of the Virginia Medical Malpractice Act since this is not a malpractice action as defined by that Act. The defendant further contends, in support of its demurrer, that the pleadings in Count One and Count Two of the motion for judgment are insufficient as a matter of law to assert a claim based upon medical malpractice. It contends that the allegations, as a whole, assert a claim for ordinary negligence in the maintenance of unsafe premises or the provision of an unsafe product and that the collapsing of a bed rail during the course of the taking of a medical history is in no way part and parcel of the provision of "health care" and is entirely separate and apart therefrom.

Section 8.01-581.1 of the Medical Malpractice Act defines "malpractice" as "any tort based on health care or professional services rendered, or which should have been rendered, by a health care provider, to a patient." "Health care" is defined in that same section as "any act, or treatment performed or furnished, or which should have been performed or furnished, by any health care provider for, to, or on behalf of a patient during the patient's diagnosis, care, treatment or confinement."

In the case of *Hagan v. Antonio*, 240 Va. 347 (1990), relied upon by the defendant, the Supreme Court of Virginia held that an improper breast examination performed by a doctor was conduct that was inseparable from the performance of a physical examination and thus involved health care or professional services and were within the Act. (Interestingly, in that same case, the Supreme Court, at least in *dicta*, held that the commission of a rape or robbery by a health care provider during treatment would not be conduct inseparable from treatment and thus would be a separate tort not covered by the Act.) In the case of *Gonzalez v. Fairfax Hospital System*, 239 Va. 307 (1990), also relied upon by the defendant, the Supreme Court of Virginia held that a lacerated toe caused by a whirlpool tub being used by the patient for treatment was "health care" as defined by the Act was inseparable from an allegation of negligent medical treatment and

fell within the definition of "malpractice" as defined in the Act. While no case directly on point is found in Virginia, the defendant points to the 1990 Indiana case of *Harts v. Caylor-Nickel Hospital*, 553 N.E.2d 874, which has a factual scenario very much like the one at bar. In that case, the plaintiff, a patient in the defendant hospital, was injured when the side rails of his bed collapsed while he was attempting to turn over, causing him to fall to the floor. The Indiana Supreme Court concluded that the action did not come within their Medical Malpractice Act as it was basically one for unsafe maintenance of premises and, therefore, separable from "health care." The allegations were not part and parcel of diagnosis and treatment which would have been covered under their Act. Apparently there was no nurse or other health care provider in attendance at the time of his fall.

The plaintiff, on the other hand, contends that his action is one for medical malpractice and is covered by the Act and that the tolling provisions of § 8.01-581.9, in effect at the time of the filing of the case, applied to toll the limitation period for 120 days upon filing of the notice of a claim of medical malpractice. The plaintiff concedes that any wrongful death action not based upon medical malpractice would be subject to the two year statute of limitations provided in § 8.01-244 of the Code, and that if this case is not deemed one for medical malpractice, it is barred by said statute. Further, the plaintiff contends that while Count One of his motion for judgment does make reference to the contractual duty owed by the defendant to his decedent, his allegations basically sound in tort and this fleeting reference to contract is not sufficient to transform this count to one for breach of contract. The plaintiff also notes that it is not necessary to look to legislative intent or history to ascertain the plain meaning of the Act from the words used therein. He contends that since it is conceded that the defendant was a health care provider and plaintiff's decedent a patient, that the words used to define health care in the Act must be given their plain meaning.

Notwithstanding the fact that the court believes the plaintiff's allegations of medical malpractice in Count One of the motion for judgment are inartfully framed and drafted, and with just deference to the Indiana court in *Harts*, the court is of the opinion to rule in favor of the plaintiff. While inartfully framed and drafted, and even though making fleeting reference to contract, the court is of the opinion that the allegations of Count One of the motion for judgment sound in tort and allege the commission of medical malpractice to a patient while receiving health care by a health care

provider while confined to the hospital. The court is of the opinion that the defendant's reliance upon *Harts* is flawed. First, as astutely noted by counsel for the plaintiff, the Indiana court relied upon the fact that the plaintiff had not alleged any breach of duty directly relating to the rendering of medical treatment whereas the Virginia court in *Gonzalez* and *Hagan* have used the "plain meaning" rule of statutory construction in interpreting our Act.

Second, the reasoning of the Indiana court is further at odds with that of the Supreme Court of Virginia in that our court has held (at least in *dicta*) in the *Hagan* case that a claim for rape or robbery committed by a health care provider upon a patient during examination would not be covered by the Act whereas the Indiana court in *Harts* cited with approval an earlier decision of that same court finding that the rape of a psychiatric patient was subject to the provisions of their Medical Malpractice Act. The Indiana court recognized that proper confinement is an act of medical care as the legislature drafted the health care definition section to encompass acts occurring during the patient's medical care, treatment or confinement.

Thirdly, I do not know what could be more elementary than that the applicable standard of care for health care providers requires that in the provision of even the most basic of health care, the taking of a medical history from the patient is primary and essential. In most instances, this is accomplished while the patient is "confined" to an office, a room, a chair, a wheelchair, an examining table, a bed, etc. In the case of an elderly patient who is infirm or incapacitated, reasonable care would certainly dictate that this be accomplished while the patient was "confined" to a wheelchair, examining table, or bed. The patient here was receiving health care from a health care provider while confined to a bed that was confined to a room confined to the defendant hospital.

Furthermore, I am persuaded by the dissent of the *Harts* case. The justice writing for the dissent noted that the majority narrowly construed the Act. He noted:

> In the case before us, the majority focuses upon the aspect of "ordinary negligence" involved with the hospital personnel's failure to properly secure the bed rail. It would seem to hold that a claim does not fall within the coverage of the Act unless the breach of duty is "directly associated with . . . medical negligence." I do not believe that the term "health care" is to be so narrowly construed.

The justice also referred to the case involving the rape of the psychiatric patient in which the majority had held that the complaint had alleged a failure to provide health care because the patient's proper *confinement* was "part and parcel of the diagnosis and treatment of her condition."

The justice further observed:

> the decision was made that side rails should be placed in the "up" position . . . . Beds in which hospital patients are placed during the course of their care and treatment routinely and necessarily have attributes and features not found in ordinary beds in private homes, hotels and the like. Such features exist for the facilitation of care and treatment and for protection of the patient. They are an integral part of the medical care . . . .

The same is certainly true in the case at bar.

I wonder if the defense's same arguments would obtain (1) if the same rail on the same bed had collapsed while the patient was positioning himself in the bed at the direction of a doctor to better facilitate an examination? (2) if the same rail on the same bed had collapsed while the patient was positioning himself in the bed at the request of a doctor to accommodate an injection? (3) if the same rail on the same bed had collapsed while the patient was being transported on the bed by a doctor or nurse to an operating room for surgery? All these "acts" would certainly seem to be part and parcel to treatment and an integral part of health care. They would seem to be "*any* tort based on health care" and subject to the provision of the Act.

For the foregoing reasons, the court will deny the plea of the statute of limitations and will deny the demurrer to Count One of the motion for judgment. The demurrer to Count Two of the motion for judgment is sustained.