# CIRCUIT COURT OF THE CITY OF CHARLOTTESVILLE

Patricia E. McDonald

v.

Brian C. Hoard et al.

April 8, 1999

Case No. 98-152

BY JUDGE EDWARD L. HOGSHIRE

In this medical malpractice case, one of the Defendants, Dr. Bagheri, has filed a Special Plea of Sovereign Immunity, along with demurrers to several of the Plaintiff's claims. The Court conducted an ore tenus hearing on January 7, 1999, at which time both parties presented evidence on the Special Plea. After reviewing the briefs and evidence of the parties and listening to oral argument, the Court is prepared to rule on the various pre-trial matters currently pending.

*Facts*

For the purposes of these demurrers, the Court accepts the Plaintiff's factual allegations in the Motion for Judgment as true. After an automobile accident, Sally Nussenfeld, the Plaintiff's daughter, was brought to the emergency room for treatment at the University of Virginia Health Sciences Center on August 2, 1997. She remained an in-patient through August 9, 1997.

During her time at the hospital, Sally received medical and dental treatment from a variety of individuals, including the Defendants, Brian C. Hoard, D.D.S., Thomas E. Leinbach, D.D.S., and Desire Bagheri, D.D.S. Dr. Bagheri treated Sally on August 2 and 3 and reinserted an upper front tooth that had been displaced in the accident. During the course of this procedure, Dr. Bagheri did not notice any foreign bodies (wood chips) in Sally's mouth or gums.

Dr. Bagheri was a recent graduate of the University of Maryland dental school at the time of Sally's treatment. She had entered a graduate program at the University of Virginia but was not required to complete any further formal training before taking her licensing exam. She considered herself competent to treat Sally's injuries. At one point during her treatment of Sally, Dr. Bagheri briefly spoke with Dr. Hoard but did not receive any instruction or direction during her consultation.

Plaintiff claims that after Sally's discharge from the University of Virginia, she visited another dentist who discovered complications with Sally's conditions. Plaintiff alleges that had the Defendants exercised proper care in their initial treatment of Sally, then these problems could have been avoided or at least mitigated.

## Questions Presented

(1) Is Dr. Bagheri entitled to sovereign immunity based on her position as a graduate dental student at a state-run hospital?

(2) If sovereign immunity does not bar the claim, has Plaintiff adequately alleged the causes of actions regarding battery, fraud, negligent infliction of emotional distress, and punitive damages?

## Discussion of Authorities

### A. Sovereign Immunity

Sovereign immunity is the threshold issue that must be examined before turning to the grounds for demurrer. The Supreme Court has defined the appropriate test for determining whether sovereign immunity applies for government employees:

> Under such circumstances, we examine the function this employee
> was performing and the extent of the state's interest and involvement

in that function. Whether the act performed involves the use of judgment and discretion is a consideration, but it is not always determinative. Virtually every act performed by a person involves the exercise of some discretion. Of equal importance is the degree of control and direction exercised by the state over the employee whose negligence is involved.

*James v. Jane*, 221 Va. 43, 53 (1980). Thus, an analysis of four factors is required: (1) the nature of the function performed; (2) the extent of the state's interest and involvement; (3) the degree of control or direction exercised by the state over the employee; and (4) whether the act complained of involved judgment and discretion. The Plaintiff argues that the Defendant must meet each and every component of the test in order for sovereign immunity to be appropriate. However, the Supreme Court established a balancing test in this regard rather than a strictly applicable, bright-line test. "Admittedly, no single all-inclusive rule can be enunciated or applied in determining entitlement to sovereign immunity." *Id.* Therefore, the Court must balance each of these factors before reaching a conclusion.

The Plaintiff concedes that Dr. Bagheri meets the fourth component of the test because she was exercising judgment or discretion. Accordingly, the Court will turn to an examination of the first three factors.

### 1. *Nature of the Function Performed by Employee*

Dr. Bagheri was acting as a treating dentist to Sally, much like a private dentist would. Consequently, this case is distinguishable from cases where the doctor involved was performing a teaching or research function, or where a doctor was helping deliver medical services to disadvantaged citizens. *See, e.g., Gargiulo v. Ohar*, 239 Va. 209, 213 (1990) ("Dr. Ohar's function was to assist as an employee and student in the conduct of a basic medical research program. That program was devised, sponsored, directed, and funded by state entities pursuant to authority expressly conferred by the General Assembly."); *Lohr v. Larsen*, 246 Va. 81, 86 (1993) ("Dr. Larsen was performing a function which was an essential part of the clinic's delivery of its health care services" to the poor.).

Defendant contends that this case falls squarely within the Supreme Court's decision in *Lawhorne v. Harlan*, 214 Va. 405 (1973), where the Court found a first-year surgical intern shielded by the doctrine of sovereign immunity for simple acts of negligence. This case was decided prior to *James*,

and thus it does not apply that test. The Court finds a critical distinction between the case at hand and *Lawhorne*. *Lawhorne* involved an intern completing his residency, which is required before obtaining a medical license. By contrast, Dr. Bagheri could have directly entered private practice after graduation from dental school; there was no requirement that she participate in a residency program. *Bagheri Deposition*, 82-83. She elected to pursue graduate work in an effort to improve her trauma skills. *Hearing Transcript*, 67 (Jan. 7, 1999) (hereinafter *Hearing*).

The Court, although mindful of Dr. Bagheri's position as a graduate student, does not feel that she is automatically entitled to immunity based on that fact. Had she directly entered private practice, she would have been unable to make any claim for sovereign immunity. The Court will thus consider Dr. Bagheri to be closer to a practicing physician rather than an intern, but it will weigh her position as a graduate student in the overall balance. Indeed, even her supervisors recognized that "it was a little bit unusual for a first-year resident to have as much experience as she had." *Hearing*, 90.

In discussing the nature of the function element of *James*, the Supreme Court subsequently elaborated on that prong of the test:

> [I]f the function that a government employee was negligently performing was essential to a governmental objective and the government had a great interest and involvement in that function, those factors would weigh in favor of the employee's claim of sovereign immunity. On the other hand, if that function has only a marginal influence upon a governmental objective and the government's interest and involvement are "slight," these factors weigh against granting governmental immunity to a government employee.

*Lohr*, 246 Va. at 85 (citations omitted). Although Dr. Bagheri was a graduate student, the function she was performing at the time of treating Sally "related to the treatment of patients." *Lee v. Bourgeois*, 252 Va. 328, 333 (1996). Had she been working directly with a supervisory dentist or been performing the treatment as an exercise for class, then those factors might have tipped the balance in favor of immunity. However, the Court can see no difference between her actions and those of a private dentist, and therefore, it concludes that the first prong of the *James* test weighs against the grant of immunity because her function had "only a marginal influence upon a governmental objective."

## 2. *Extent of State's Interest and Involvement*

The factor of the state's interest and involvement in the employee's function is intertwined with the previous factor, the nature of the employee's function. The Commonwealth can assert one principle interest in Dr. Bagheri's function and can demonstrate involvement in her practice. First, the Commonwealth has an interest in educating dental graduate students, analogous to its interest in *Gargiulo* of "training and maintaining a pool of specialists skilled in a particular discipline." *Gargiulo*, 239 Va. at 213. Indeed, Dr. Leinbach testified that patient treatment was "an integral part of the training" for the residents. *Hearing*, 89.

Second, the Commonwealth is involved in Dr. Bagheri's day-to-day operations. She received a salary from the Commonwealth; she could not pick and choose her patients; and she did not bill patients directly for her services. The Plaintiff has stipulated to those facts. *Hearing*, 75-76.

Given the Commonwealth's interest and involvement in Dr. Bagheri's actions, the question becomes whether this interest and involvement was manifested in Dr. Bagheri's treatment of Sally. Although the Commonwealth certainly has an important interest in providing its citizens with quality medical treatment and in training future practitioners, "The state's interest and the state's involvement, in its sovereign capacity, in the treatment of a specific patient by an attending physician in the University Hospital are slight; equally slight is the control exercised by the state over the physician in the treatment accorded that patient." *James*, 221 Va. at 54. Furthermore, the Court concludes that the Commonwealth's involvement in Dr. Bagheri's day-to-day operations does not require the imposition of immunity when she is treating a single patient. Here Dr. Bagheri was not forced to treat Sally against her will nor was she forced to render inadequate services based on state-prescribed procedures. Consequently, the Court finds that the second element weighs against the grant of immunity.

## 3. *Degree of Control of Direction Exercised by the State*

The Virginia Supreme Court has observed, "A high level of control weighs in favor of immunity; a low level of such control weighs against immunity." *Lohr*, 246 Va. at 88. Here, the Plaintiff has conceded that Dr. Bagheri's actions involved the use of judgment and discretion in treating Sally. The Court again turns to the words of the Supreme Court in *Lohr*: "[W]hen a

government employee is specially trained to make discretionary decisions, the government's control must necessarily be limited in order to make maximum use of the employee's special training and subsequent experience." *Id.*

The Defendant has not pointed to any requirement that Dr. Bagheri had to seek approval from her superiors *before* conducting treatment on Sally. In fact, Dr. Leinbach, the director of Dr. Bagheri's residency program, testified that there was no written protocol that requires a dental resident to call the attending physician before providing emergency services; rather, the judgment is left to the resident. *Hearing,* 95. Dr. Bagheri had performed more than ten emergency procedures without supervision prior to treating Sally. *Bagheri Deposition,* 76-77. She also considered herself competent to perform the reinsertion procedure. *Id.* at 21-22. She did speak with Dr. Hoard about the procedure on August 2nd, but she "just wanted to make sure my plan was okay with him." *Hearing,* 70. Dr. Bagheri examined Sally further on August 3rd but did not contact any of her supervisors at that time. *Hearing,* 73.

Consequently, by allowing Dr. Bagheri to exercise judgment and discretion in emergency situations without seeking approval for her diagnoses and planned course of treatment, the Commonwealth necessarily forfeited a large degree of control and direction over her actions. The Court thus concludes that this factor weighs against the grant of immunity because the Commonwealth only exercised "a low level of such control" over Dr. Bagheri's actions.

### 4. *The Overall Balance*

After reviewing each of the *James* factors independently, the Court must now engage in a balancing test in order to determine whether or not sovereign immunity will apply. As the above analysis reveals, three of the *James* factors weigh against the grant of immunity, whereas one points in favor of immunity. The sole factor that militates in favor of immunity is that Dr. Bagheri's conduct involved the use of judgment and discretion. The Supreme Court, however, has cautioned, "Whether the act performed involves the use of judgment and discretion is a consideration, but it is not always determinative. Virtually every act performed by a person involves the exercise of some discretion." *James,* 221 Va. at 53. The Court concludes that the lone factor in favor of immunity is not strong enough to outweigh the remaining three factors. Therefore, for the above-stated reasons, the Court denies Dr. Bagheri's Special Plea of Sovereign Immunity.

## B. *Demurrer*

As a threshold matter, Defendants contend that Plaintiff's claims for battery, fraud, negligent infliction of emotional distress, and punitive damages are barred because they do not state causes of action separate from the medical malpractice claim. Defendants rely primarily on *Hagan v. Antonio*, 240 Va. 347 (1990), which ruled that the definition of medical malpractice under Va. Code § 8.01-581.1 encompassed all acts that are based on, arise from, or stem from the provision of medical care to the patient.

Under the prior version of Va. Code § 8.01-581.2, a plaintiff was required to notify the health care provider in writing about the claim prior to commencing the action. This requirement, however, was repealed in 1993. The results in *Hagan* and in *Glisson v. Loxley*, 235 Va. 62 (1988), hinge on an application of the prior version of the statute. Those cases gave a broad interpretation to "medical malpractice" and held that individuals who did not follow the steps prescribed by the former § 8.01-581.2 could not maintain a cause of action based on conduct relating to medical treatment. The repeal of that section has rendered the opinions of *Hagan* and *Glisson* of limited value to the present inquiry. The legislature has not revoked a plaintiff's right to sue under common law causes of action in addition to bringing a malpractice claim, nor has the Supreme Court announced such a rule. The Plaintiff correctly points out that the Supreme Court apparently recognizes common law causes of action as distinct from medical malpractice claims. *See, e.g., Woodbury v. Courtney*, 239 Va. 651, 653 (1990).

The Court therefore declines to grant the demurrers based purely on the Defendant's *Hagan*-based argument. Accordingly, it turns to the merits of each individual claim.

### 1. *Battery*

The Virginia Supreme Court has applied the common law definition of battery to a case involving a physician in *Pugsley v. Privette*, 220 Va. 892 (1980). The Court explained:

"The law is so jealous of the sanctity of the person that the slightest touching of another … if done in a rude, insolent, or angry manner constitutes a battery for which the law afford redress … ." It is well established that given the proper factual conditions and circumstances, a patient can maintain against a physician an action based on assault

and battery for acts arising out of the physician's professional conduct. The relationship between physician and patient is a consensual one and "[a] surgical operation on the body of a person is a technical battery or trespass unless he or some authorized person consented to it." An unauthorized operation is a wrongful and unlawful act for which the surgeon will be liable in damages.

*Id.* at 899 (citations omitted). In this context, the question becomes whether the Plaintiff has adequately alleged a lack of consent to the procedures performed by Dr. Bagheri.

In the Motion for Judgment (hereinafter *Complaint*), Plaintiff avers that "Dr. Bagheri never requested formal consent to treat Sally, and Ms. McDonald never signed a consent to treatment by Dr. Bagheri or anyone in dental services." *Complaint*, ¶ 13. Later in the Complaint, however, Plaintiff makes a seemingly contradictory statement that "Ms. McDonald did, in fact, believe those representations and rely upon them, to her detriment and that of her daughter and her husband, and a [sic] result of these representations, *acquiesced to Dr. Bagheri's treatment of Sally* on August 2, 1997." *Complaint*, ¶ 44 (emphasis added).

At the hearing on these issues, Plaintiff's counsel stressed that the battery claim was premised on a complete lack of consent, rather than on informed consent, which is an action sounding in negligence. *Hearing*, 122. The Court concludes that Plaintiff's admission that she acquiesced to Dr. Bagheri's treatment is fatal to her battery claim. If Plaintiff acquiesced to treatment, then she cannot meet the standard set forth in *Pugsley*. Therefore, the demurrer to this ground is sustained.

### 2. *Fraud*

Defendants contend that Plaintiff's fraud claim fails to allege the requisite intent necessary for that cause of action and that it does not allege any misrepresentation of material facts. In the Complaint, Plaintiff avers that "Dr. Bagheri falsely and fraudulently advised Ms. McDonald that she was qualified to treat Sally, that she was in communication with one or more attending physicians who agreed with her treatment plan, and that she had advised one or more attending physicians of Sally's condition and her plan of treatment." *Complaint*, ¶ 44. Plaintiff continues, "Dr. Bagheri intended for Ms. McDonald to rely upon her representations," and Plaintiff relied on those representations to her detriment. *Id.*

The Supreme Court has recently delineated the elements of fraud: "One who advances a cause of action for actual fraud bears the burden of proving by clear and convincing evidence: (1) a false representation, (2) of a material fact, (3) made intentionally and knowingly, (4) with intent to mislead, (5) reliance by the party misled, and (6) resulting damage to the party misled." *Evaluation Research Corp. v. Alequin*, 247 Va. 143, 148 (1994). A plaintiff pressing such a claim must plead these elements with particularity.

The Court assumes, without deciding, that Plaintiff has satisfied the threshold showing at the demurrer stage. Nevertheless, the Defendants also have moved for partial summary judgment on the fraud claim, and the Court concludes that it should be granted. As a cornerstone for the Plaintiff's sovereign immunity defense, she repeatedly states that Dr. Bagheri was qualified to treat Sally. *See Plaintiff's Mem. in Opposition to Defendant's Plea of Sov. Immunity* (Jan. 21. 1999), 6-8. Furthermore, Plaintiff concedes that Dr. Bagheri did in fact consult with at least one other supervisor and that he agreed with her treatment plan. *Id.* at 3 ("Dr. Bagheri consulted by telephone with Dr. Hoard … she reviewed her plan with him and he agreed with it."). The Court thus concludes that there is no genuine issue of material fact for trial concerning whether or not Dr. Bagheri made a false representation of a material fact, and it accordingly grants partial summary judgment on the fraud count.

### 3. Negligent Infliction of Emotional Distress

Plaintiff alleges that the Defendants' conduct in their treatment of Sally negligently inflicted emotional distress upon her. Plaintiff relies upon *Naccash v. Burger*, 223 Va. 406 (1980), in support of her argument.

*Naccash* allowed the parents of a child born with Tay-Sachs disease to recover for negligent infliction of emotional distress, carving out an exception to the typically narrow boundaries of that tort. The facts of that case are important. In *Naccash*, the doctor misdiagnosed the mother, told her that she was not a carrier for the disease, and concluded that the child would not be afflicted with the disease. As a result, the parents decided to carry the child to term rather than abort. *Id.* at 411. The Supreme Court found that on these facts, the parents were directly injured by the doctor's breach of a duty that he owed them. *Id.* at 414-15. Later cases have refused to read *Naccash* as a wholesale expansion of the tort of negligent infliction of emotional distress. In fact, the Court has emphasized: *"Naccash* is confined to its particular facts." *Myseros v. Sissler*, 239 Va. 8, 9 (1990).

The Circuit Court of Wise County was recently confronted with a case factually analogous to the one at hand. There, the plaintiff alleged that medical malpractice performed on her daughter caused her emotional distress. *Litton v. Cann*, 47 Va. Cir. 334 (1998). After a thorough examination of *Naccash* and its progeny, Judge Quillen concluded that the plaintiff had not alleged a cause of action recognized under Virginia law. *Id.*

The Court finds that Judge Quillen's opinion is persuasive, and it adopts the reasoning therein. In treating Sally, Dr. Bagheri had a duty to exercise reasonable case, but that duty was to Sally, rather than her mother. This case is thus distinguishable from the unusual circumstances in *Naccash*.

The question thus becomes whether Plaintiff has adequately alleged a cause of action under the traditional standards of negligent infliction of emotional distress. The Supreme Court has defined the elements of the tort as follows.

> We adopt the view that a cause of action will lie for emotional distress, unaccompanied by physical injury, provided four elements are shown: One, the wrongdoer's conduct was intentional or reckless. This element is satisfied where the wrongdoer had the specific purpose of inflicting emotional distress or where he intended his specific conduct and knew or should have known that emotional distress would likely result. Two, the conduct was outrageous and intolerable in that it offends against the generally accepted standards of decency and morality. This requirement is aimed at limiting frivolous suits and avoiding litigation in situations where only bad manners and mere hurt feelings are involved. Three, there was a causal connection between the wrongdoer's conduct and the emotional distress. Four, the emotional distress was severe.

*Ruth v. Fletcher*, 237 Va. 366, 367-68 (1989) (quoting *Womack v. Eldridge*, 215 Va. 338, 342 (1974)). The Supreme Court erected high obstacles for pursuing such a claim, based on its fear about prompting frivolous suits. Plaintiff clearly cannot satisfy these stringent requirements. In fact, the Plaintiff has failed to allege any facts to support the first element, that Defendants had the "specific purpose of inflicting emotional distress" on the Plaintiff herself. Plaintiff has also not alleged that she had to undergo any psychological treatment or counseling for this distress. Therefore, the Court sustains the demurrer concerning the negligent infliction of emotional distress count.

### 4. *Punitive Damages*

The Defendants' final demurrer attacks the punitive damages claim. Defendants first contend that the Virginia Medical Malpractice Act precludes punitive damages in this case. Va. Code § 8.01-581.15 limits the total recovery in a medical malpractice action to $1,000,000.00. Defendant's argument fails under the rule enunciated in *Bulala v. Boyd*, 239 Va. 218 (1990), which precluded punitive damages after the statutory cap had already been exhausted. It would not be improbable for a jury to return a verdict for compensatory damages for under $1,000,000.00, which would then allow Plaintiff to recover punitive damages up to the $1,000,000.00 limit (but not more than $350,000.00) if she sustained her burden of proof on the punitive damages claim.

Defendants next argue that if the battery and fraud counts are stricken, then punitive damages should be unavailable because no intentional tort will have survived. Although the Court will strike both of those claims, the Court does not agree with this assertion that an intentional tort is a prerequisite for a punitive damages claim. Willful and wanton negligence can also sustain a punitive damages claim:

> We have stated "that negligence which is so willful or wanton as to evince a conscious disregard of the rights of others, as well as malicious conduct, will support an award of punitive damages." Willful and wanton negligence is defined as "acting consciously in disregard of another person's rights or acting with reckless indifference to the consequences, with the defendant aware, from his knowledge of existing circumstances and conditions, that his conduct probably would cause injury to another."

*Owens-Corning Fiberglas Corp. v. Watson*, 243 Va. 128, 144 (1992) (citations omitted). Plaintiff has alleged negligence throughout her Complaint. She also avers that the Defendants' conduct was "willful, wanton, and oppressive and done with a conscious indifference to the well-being and welfare of the Plaintiffs." *Complaint*, ¶ 71. Therefore, at this stage of the litigation, Defendants' demurrer to the punitive damages count must be overruled.

## *Conclusion*

For the above-stated reasons, the Court denies Defendant's Special Plea of Sovereign Immunity, sustains the Defendants' demurrer to the battery count and to the negligent infliction of emotional distress count, grants partial summary judgment on the fraud count, and overrules the demurrer regarding punitive damages.