## CIRCUIT COURT OF THE CITY OF ALEXANDRIA

Glenn

v.

Trauben et al.

June 18, 2004

Case No. CL04001114

BY JUDGE JOHN E. KLOCH

On Motions Day April 28, 2004, this Court took under advisement Defendant's demurrer to Plaintiff's fraud and punitive damages claims. After review of the parties' memoranda, argument of counsel, and pertinent authorities, the Defendant's demurrer is overruled.

### *Fraud*

Virginia's pleading standards for fraud are well known; such claims must clearly identify (1) a false representation (2) of a material fact (3) made intentionally and knowingly, (4) with intent to mislead, as well as (5) reliance by the misled party and (6) resulting damage. *Richmond Metropolitan Auth. v. McDevitt Street Bovis, Inc.*, 256 Va. 553, 558-59, 507 S.E.2d 344 (1988); *Thompson v. Bacon*, 245 Va. 107, 111, 425 S.E.2d 512 (1993). To recover upon such a claim, the complaining party must prove the elements by clear and convincing evidence. *Thompson*, 245 Va. at 111. Further, fraud must be alleged with particularity and relate to a present or a pre-existing fact, not based upon unfulfilled promises or statements as to future events. *Tuscarora v. B.V.A. Credit*

*Corp.*, 218 Va. 849, 858, 241 S.E.2d 778 (1978), and *Patrick v. Summers*, 235 Va. 452, 454, 369 S.E.2d 162 (1988) (*quoting Soble v. Herman*, 175 Va. 489, 500, 9 S.E.2d 459 (1940)).

Defendants assert that Ms. Glenn's motion for judgment failed to plead sufficient facts for a cognizable claim for fraud and that, instead, the Plaintiff's claim is for malpractice. First, Defendants argue that Plaintiff fails to meet the elements of fraud because statements made by Dr. Trauben were medical opinions and not facts. As such, Defendants say Plaintiff failed to assert willful and knowing false representations with intent to mislead.

The statements asserted include Dr. Trauben's characterization that Ms. Glenn's spine was "horribly misaligned" and "one of the worst cases he had ever seen." That characterization led Dr. Trauben to represent to Ms. Glenn that treatment would require a six month regimen of regular visits. These statements, Defendants argue, were mere opinions laden with vague language she should not have been expected to rely upon. Defendants direct the Court to what they believed was precedent supporting the finding that opinions could not be factual representations, citing the Virginia Supreme Court case of *Tate v. Colony House Builders, Inc.*, 257 Va. 78, 508 S.E.2d 597 (1999). That case does indeed point out the difference between fact and opinion:

> It is well settled that a misrepresentation, the falsity of which will afford ground for an action for damages, must be of an existing fact, and not the mere expression of an opinion. The mere expression of an opinion, however strong and positive the language may be, is no fraud. Such statements are not fraudulent in law because . . . they do not ordinarily deceive or mislead. Statements which are vague and indefinite in their nature and terms, or are merely loose, conjectural, or exaggerated, go for nothing, though they may not be true, for a [person] is not justified in placing reliance upon them.

*Id.* at 82 (*citing Saxby v. Southern Land Co.*, 109 Va. 196, 198, 63 S.E. 423 (1909)). But *Tate* does more than just point out the dichotomy, it points this Court to prior case law that explores the narrow lane between the two:

> There is no certain rule by the application of which it can be determined when false representations constitute matters of opinion or matters of fact, but each case must in a large measure be adjudged on its own facts, taking into consideration the nature

of the representation and the meaning of the language used as applied to the subject matter and as interpreted by the surrounding circumstances.

It is not always an easy matter to determine whether a given statement is one of fact or opinion. The relative knowledge of the parties' dealing, their intentions, and all of the surrounding circumstances, which can only be gathered from the evidence, affect the interpretation which the courts put upon representations in determining whether they be of fact or opinion.

*Id.* at 83. (*citing Packard Norfolk, Inc. v. Miller*, 198 Va. 557, 95 S.E.2d 207 (1956)).

Clearly the Supreme Court was grappling with statements that straddle the fence between knowing representation of fact and opinion. Defendants ask this Court to interpret *Tate*, and its predecessors, to say that statements with characterizations like "horribly misaligned" and "worst case" as mere opinion language, regardless of the fact that it was coming from Ms. Glenn's medical specialist. Further, Defendants argue that these were vague and not worthy of reliance, including the recommended course of treatment.

Defendants go too far with this position, and it eclipses the spirit of the analysis that the Supreme Court *Tate* and *Packard* opinions expect. This Court can understand that doctors and other professionals may state opinions, but, when they announce an opinion as to the condition of a subject area for which they are a trained and licensed professional, there must be some expectation that the patient may rely on that as a statement of fact. As *Tate* announced, this Court must look to the relative knowledge of the parties to the discussion, their intentions, and the surrounding circumstances. Were this Court to ignore the special relationship between an untrained patient and a licensed physician, it would be remiss in following the directives of binding precedent. A physician describing, in his professional opinion, the state of his patient's physical condition holds a considerably superior position over the patient, who seeks medical treatment. Were Ms. Glenn not expected to rely upon the doctor's opinion as to medical treatment, how was she supposed to determine the fact of her bodily situation? This is a situation where medical opinion should be taken as fact, especially in light of the relative positions of the parties.

Second, Defendants argue that the motion for judgment fails to properly assert the willful and knowing misrepresentation elements. Specifically, Defendants believe Ms. Glenn's motion for judgment merely adds a conclusory

statement as to Dr. Trauben's willful proffer of a known falsehood. This Court's review of the pleading finds Ms. Glenn offering enough assertion as to the willful statement to meet the long-standing principle of notice pleading. If Defendants wish to argue, after discovery, that Defendants are entitled to summary judgment because adduced facts fail to meet the proof, it is Defendant's prerogative at that time. In Virginia, a demurrer cannot be used as a tool for summary judgment and, in this case, the motion for judgment clearly includes elements of an assertion and the fact that Ms. Glenn received alternative assessment of her physical condition. If every assertion in a bill or motion for judgment was required to come with proven facts, there would be no need for discovery and trial; the courts would summarily rule on all causes of action.

Third, Defendants seek to demur to the motion for judgment on the basis that Ms. Glenn failed to allege the essential element of damages flowing from the alleged fraud. Specifically, Defendants argue that a claim of physical injury flowing from the acts would be an intervening tort. This Court reads the motion for judgment as alleging Ms. Glenn was induced by fraud to undergo unnecessary treatments that she paid for and was then physically injured causing damages of additional medical, physical, and mental costs. As discussed previously, this assertion meets notice pleading and, therefore, will not be dismissed by this Court. The assertion was made, but not proven yet because this cause has not reached a hearing on summary judgment.

### Virginia Malpractice Act

Defendants also ask this Court to dismiss Ms. Glenn's motion for judgment as improperly pleaded because this is really a tort suit flowing from medical treatment, which is covered under the Virginia Malpractice Act (Va. Code § 8.01-581.1 *et seq.*). The Code specifically defines malpractice as: "any tort based on health care or professional services rendered, or which should have been rendered, by a health care provider, to a patient." Defendants argue that this case is one which is a misdiagnosis and, therefore, a tort under the definition of malpractice. This Court is not convinced that the Malpractice Act covers the situation in this case.

A review of the applicable case law indicates that the Malpractice Act has been interpreted by the Courts to include all manner of tortious conduct arising out of health care or professional services rendered to the patient. *Hagan v. Antonio*, 240 Va. 347, 350-51, 397 S.E.2d 810 (1990). That interpretation seeks out the plain meaning of the statute and, therefore, does not enlighten our analysis. It is, however, valuable to look at the situations on the fringe of the

definition. In *Hagan*, the Court ruled that a doctor's fondling of a female patient during a medical examination was clearly within the definition because a part of the physical exam included a great deal of physical conduct with the patient and was, therefore, "conduct that was an inseparable part of the health care being rendered. . . ." In a case seemingly more analogous to the present controversy, Judge Doherty, in the Roanoke Circuit Court, ruled a doctor's alleged improper modification of his patient's medical records was included because it occurred during or around the time of the required surgical treatment. *Langford v. Kelly*, 54 Va. Cir. 310 (Roanoke City 2000). In both of those cases, and all other medical tort cases that this Court has notice of, the alleged tort arose following the agreement between the patient and doctor to commence treatment.

This Court reads the motion for judgment as alleging a misrepresentation by a doctor to a patient before treatment began. The line between physician consultation and actual treatment is a fine one, but it is the opinion of this Court that in a situation like the one here, Ms. Glenn came to Dr. Trauben as a specialist to seek his opinion on her physical pain. The motion for judgment may be read as alleging that the doctor reviewed the patient's condition and, in essence, proposed the sale of services that she did not need and in action, which led to damage.

Defendants seem to be arguing for this Court to find all torts committed by health care providers as malpractice, but that policy could lead to an over inclusive reading of the statute. It would lead to coverage of many non-treatment actions like premises liability for patient injury while coming or going to appointments or even intentional torts not strictly associated with the treatment at hand but occurring during the course of treatment. There must be a line drawn to separate the acts the General Assembly meant to cover and those that are outside, and this cause is just outside the circle Defendants ask this Court to recognize. This Court is of the opinion that the Virginia Malpractice Act does not automatically engage the moment a potential patient enters the doctor's office; the engagement begins once actual treatment is agreed upon. Defendant's demurrer to the fraud claim is overruled as this Court does not find the Malpractice Act a bar to this particular fraud claim.

### Punitive Damages

As with fraud, Virginia's position on punitive damages is well established but generally disfavored by the courts. *Owens-Corning Fiberglas Crop. v. Watson*, 243 Va. 128, 144, 413 S.E.2d 630 (1992). Punitive, or exemplary, damages may only be awarded where there is misconduct or actual

malice, or such recklessness or negligence as to evince a conscious disregard of the rights of others. *Giant of Virginia v. Pigg*, 207 Va. 679, 685-86, 152 S.E.2d 271 (1967). A party may establish actual malice by showing ill will, malevolence, grudge, spite, wicked intention, or a conscious disregard of the rights of another. *Lee v. Southland Corp.*, 219 Va. 23, 27, 244 S.E.2d 756 (1978) (finding that proof may be by direct or circumstantial evidence).

In addition to those cases that discuss the underpinnings of punitive damages, the Virginia Supreme Court has also ruled on punitive damages awards in fraud. In *Jordan v. Suave*, the Court considered the proof of willful misconduct where an automobile salesman was alleged to have misrepresented a used car as new:

> We hold that the same rule of the proof necessary to support a claim for punitive damages which applies to actions for false arrest, false imprisonment, and malicious prosecution also applies to a claim for punitive damages in an action based on fraud; namely, that punitive damages may be recovered only if there is proof, either direct or circumstantial, showing actual malice.

*Jordan v. Suave*, 219 Va. 448, 453, 247 S.E.2d 739 (1978).

In *Jordan*, the Court ruled on the propriety of the trial court's decision to strike punitive damages following the evidence. *Id.* Here, obviously, Defendants seek in their demurrer to have the punitive damage claim struck, so the Court recognizes the limited nature of the precedent on my ruling today. That case is instructive, however, in that it directs us to look to whether the motion for judgment points to the elements of malice. The *Jordan* court looked to the *Pigg* Case, cited *supra*, to define the proper award of punitive damages in a malicious prosecution action; therein, the Court said that the actor in question must have been prompted to act by "ill will, malevolence, grudge, spite, wicked intention, or a conscious disregard of the rights of another." *Id.* at 452. It is the latter portion of that list this Court considers applicable to this case. Ms. Glenn alleges in her motion for judgment that the doctor misrepresented her physical state in order to coax her into an extensive course of treatment. This Court believes this assertion is sufficient pleading to surpass a demurrer and allow the parties to go forward to trial.